Erik Grafe (AK Bar #0804010)
Hannah Payne Foster (AK Bar #2105045)
Earthjustice
310 K Street, Suite 508
Anchorage, AK 99501
T: (907) 277-2500
egrafe@earthjustice.org
hfoster@earthjustice.org
[*Additional counsel listed on signature page*]

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN ALASKA ENVIRONMENTAL CENTER et al., | Case No. 3:25-cv-00038-SLG |
| *Plaintiffs*, | |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | |
| *Defendants*, | |
| and | |
| AMERICAN PETROLEUM INSTITUTE, | |
| *Intervenor-Defendant*. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ............................................................................................... 1

LEGAL BACKGROUND .................................................................................... 2

FACTUAL AND PROCEDURAL BACKGROUND ............................................ 4

    I.     Presidential Withdrawals Under Section 12(a) ..................................... 4

    II.    President Biden's Section 12(a) Withdrawals......................................... 6

    III.   President Trump's Latest Attempt to Reverse 12(a)
         Withdrawals and Expedite Oil and Gas Development in the
         OCS ....................................................................................................... 8

STANDARD OF REVIEW .................................................................................. 10

ARGUMENT ....................................................................................................... 12

    I.     Plaintiffs Have Standing to Bring this Action..................................... 13

         A.    Legal standard ........................................................................... 13

         B.    Plaintiffs' Allegations Demonstrate a Concrete and
              Particularized Injury................................................................. 14

         C.    Harm Is Imminent Now that the Withdrawn OCS Areas
              Are Available for Oil and Gas Exploration and
              Development ............................................................................... 18

    II.    Plaintiffs' Legal Claims Are Ripe for Review ..................................... 24

    III.   Sovereign Immunity Does Not Bar Plaintiffs' Claims ........................ 27

    IV.   Plaintiffs Do Not Need a Congressionally Bestowed Right of
         Action ................................................................................................... 31

    V.    Plaintiffs Sued the Agencies for Purposes of Relief, Not to
         Challenge a Final Agency Action ......................................................... 34

CONCLUSION .................................................................................................... 35

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Alexander v. Sandoval,*
532 U.S. 275 (2001)..................................................................32, 33

*Aminoil U. S. A., Inc. v. Cal. State Water Res. Control Bd.,*
674 F.2d 1227 (9th Cir. 1982) .................................................29

*Amoco Prod. Co. v. Village of Gambell,*
480 U.S. 531 (1987)..................................................................34

*Armstrong v. Exceptional Child Ctr.,*
575 U.S. 320 (2015)..........................................................31, 32, 33

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..................................................................18

*Attias v. Carefirst, Inc.,*
865 F.3d 620 (D.C. Cir. 2017).........................................12, 13, 18

*Ball v. Rodgers,*
492 F.3d 1094 (9th Cir. 2007) ..................................................33

*Blum v. Yaretsky,*
457 U.S. 991 (1982)..................................................................19, 23

*Carpenters Indus. Council v. Zinke,*
854 F.3d 1 (D.C. Cir. 2017)......................................................18, 24

*Center for Biological Diversity v. Kempthorne,*
588 F.3d 701 (9th Cir. 2009) ....................................................16, 26

*Center for Biological Diversity v. U.S. Dep't of Interior,*
563 F.3d 466 (D.C. Cir. 2009)..................................................26

*Chamber of Com. v. Reich,*
57 F.3d 1099 (D.C. Cir. 1995)..................................................25

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.,*
333 U.S. 103 (1948)..................................................................28

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 3 of 43
iii

*City of Oakland v. Lynch*,
798 F.3d 1159 (9th Cir. 2015) ............................................................... 23

*CopyTele, Inc. v. E Ink Holdings, Inc.*,
962 F.Supp.2d 1130 (N.D. Cal. 2013) .................................................. 11

*Dalton v. Specter*,
511 U.S. 462 (1994) ............................................................... 28, 29, 30

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ............................................................................ 19

*E.V. v. Robinson*,
906 F.3d 1082 (9th Cir. 2018) ............................................................. 30

*Fowler v. Guerin*,
899 F.3d 1112 (9th Cir. 2018) ............................................................. 25

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
561 U.S. 477 (2010) ..................................................................... 32, 34

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ..................................................................... 13, 14

*Harmon v. Brucker*,
355 U.S. 579 (1958) ............................................................................ 31

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ............................................................................ 14

*Kunaknana v. U.S. Army Corps of Engineers*,
23 F.Supp.3d 1063 (D. Alaska 2014) .................................................. 17

*Larson v. Domestic & Foreign Commerce Corp.*,
337 U.S. 682 (1949) .................................................................... passim

*League of Conservation Voters v. Biden*,
843 F. App'x 937 (9th Cir. 2021) .......................................................... 6

*League of Conservation Voters v. Trump*,
303 F.Supp.3d 985 (D. Alaska 2018) ............................................. passim

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 4 of 43

*League of Conservation Voters v. Trump*,
363 F.Supp.3d 1013 (D. Alaska 2019) ............................................3, 4, 5, 28, 29

*Lonberg v. City of Riverside*,
571 F.3d 846 (9th Cir. 2009) ...............................................................................33

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)...........................................................................14, 15, 18, 33

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010)..............................................................................................18

*Murphy Company v. Biden*,
65 F.4th 1122 (9th Cir. 2023) ...............................................................28, 30, 31

*Nat. Res. Def. Council v. EPA*,
755 F.3d 1010 (D.C. Cir. 2014) ...........................................................................18

*Nw. Requirements Utils. v. FERC*,
798 F.3d 796 (9th Cir. 2015) ...............................................................................18

*Ohio Forestry Ass'n v. Sierra Club*,
523 U.S. 726 (1998)..............................................................................................26

*Pride v. Correa*,
719 F.3d 1130 (9th Cir. 2013) .............................................................................11

*Project Veritas v. Schmidt*,
125 F.4th 929 (9th Cir. 2025) ..............................................................................24

*Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*,
697 F.3d 1192 (9th Cir. 2012) .............................................................................15

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......................................................................10, 11

*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regul. Comm'n*,
100 F.4th 1039 (9th Cir. 2024) ............................................................................24

*Sioux Tribe of Indians v. United States*,
316 U.S. 317 (1942)................................................................................................2

*Stavrianoudakis v. U.S. Fish & Wildlife Serv.*,
　　108 F.4th 1128 (9th Cir. 2024) ........................................................................25

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
　　559 U.S. 662 (2010) ........................................................................................25

*Summers v. Earth Island Institute*,
　　555 U.S. 488 (2009) ........................................................................................17

*Susan B. Anthony List v. Driehaus*,
　　573 U.S. 149 (2014) ....................................................................................14, 18

*Swan v. Clinton*,
　　100 F.3d 973 (D.C. Cir. 1996) ........................................................................35

*United States v. Yakima Tribal Court*,
　　806 F.2d 853 (9th Cir. 1986) ..........................................................................29

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
　　535 U.S. 635 (2002) ........................................................................................32

*White v. Lee*,
　　227 F.3d 1214 (9th Cir. 2000) ........................................................................10

*Wilderness Society, Inc. v. Rey*,
　　622 F.3d 1251 (9th Cir. 2010) ........................................................................17

**Statutes**

43 U.S.C. § 1301 ........................................................................................................3

43 U.S.C. § 1331 *et seq* ............................................................................................2

43 U.S.C. § 1332 ........................................................................................................3

43 U.S.C. § 1334 .....................................................................................................3, 4

43 U.S.C. § 1337 ........................................................................................................4

43 U.S.C. § 1340 ........................................................................................................4

43 U.S.C. § 1341 .....................................................................................................1, 3

43 U.S.C. § 1344 .....................................................................................................3, 4

43 U.S.C. § 1351 .................................................................................4

44 U.S.C. § 1507 ...............................................................................11

**Regulations**

30 C.F.R. Part 550 ..............................................................................4

30 C.F.R. Part 551 ..............................................................................4

**Federal Register**

48 Fed. Reg. 10605 (Mar. 14, 1983) .............................................3

86 Fed. Reg. 7037 (Jan. 25, 2021) .................................................5

90 Fed. Reg. 17972 (Apr. 30, 2025) ..............................10, 20, 21

**Other Authorities**

Fed. R. Civ. P. 8 ...............................................................................12

U.S. Const. Art. IV, § 3, cl. 2 ....................................................2, 30

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 7 of 43

# INTRODUCTION

In this action, Plaintiffs challenge President Trump's unlawful attempt to revoke a prior president's permanent withdrawal of Outer Continental Shelf ("OCS") areas from oil and gas leasing pursuant to section 12(a) of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1341(a). Under the U.S. Constitution, Congress holds sole authority over lands and waters that are the property of the United States, except to the degree it explicitly delegates that authority to the executive branch. Through passage of OCSLA in 1953, Congress authorized presidents to preserve federal offshore areas by withdrawing them from leasing. Eight presidents have used that power to provide permanent protections for selected areas of the OCS. Consistent with this tradition and the authority provided by OCSLA, President Biden permanently withdrew certain OCS areas in the Arctic, the Pacific and Atlantic Oceans, and the Gulf of Mexico from oil and gas leasing during his term in office.

Until 2017, no president had ever attempted to reverse a permanent withdrawal, as there is no statutory or constitutional authority for doing so. This Court agreed in *League of Conservation Voters v. Trump*, finding that President Trump's attempt to revoke withdrawals made by President Obama was unlawful and in excess of his authority under OCSLA. That case, on appeal, was ultimately mooted when President Biden restored those protections. Ignoring this Court's finding, President Trump has again issued an executive order purporting to revoke permanent withdrawals established by President Biden pursuant to Section 12(a) while also directing that these areas be open for expedited oil and gas development.

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00008-SLG
Case 3:25-cv-00008-SLG    Document 48    Filed 07/08/25    Page 8 of 43

Defendants' attempt to derail this action by raising numerous jurisdictional issues, which this Court has previously addressed and rejected, lacks merit. *See League of Conservation Voters v. Trump*, 303 F.Supp.3d 985, 993-1001, (D. Alaska 2018). This action threatens imminent injury, including from seismic survey activity that often precedes offshore leasing by years, to Plaintiffs' members who use and enjoy the resources of the withdrawn areas for recreational, aesthetic, commercial, and subsistence purposes. Because of these injuries, Plaintiffs' claims are also ripe for review. Moreover, federal courts have long established the ability to declare actions of presidents *ultra vires* and order subordinate officials not to implement them. Furthermore, Plaintiffs' claims do not hinge on a statutory right of action or challenge a final agency action of any federal agency.

Consequently, and consistent with its prior ruling, the Court should deny Defendants' motion to dismiss.

## LEGAL BACKGROUND

The Property Clause of the Constitution gives Congress the "exclusive[]" power to manage the United States' lands and associated resources. *Sioux Tribe of Indians v. United States*, 316 U.S. 317, 326 (1942); *see* U.S. Const. Art. IV, § 3, cl. 2. Through the enactment of OCSLA, Congress shared with the Executive Branch a discrete part of its constitutional authority over federal lands and waters.

OCSLA governs the leasing, exploration, and development of oil and gas deposits in the Outer Continental Shelf. 43 U.S.C. § 1331 *et seq*. The OCS extends from the outer boundary of state waters, typically three nautical miles from shore, to the outer boundary

of the United States' Exclusive Economic Zone, 200 nautical miles from shore. *Id.* §§ 1301(a)(2), 1331(a); 48 Fed. Reg. 10605 (Mar. 14, 1983). The OCS consists of approximately 3.2 billion acres.[1]

Under OCSLA, the Secretary of the Interior is charged with managing oil and gas activities on the OCS. 43 U.S.C. §§ 1334(a), 1344(a). This management "shall be conducted in a manner which considers economic, social, and environmental values of the renewable and nonrenewable resources contained in the [OCS]," as well as "the potential impact of oil and gas exploration on other resource values of the outer Continental Shelf and the marine, coastal, and human environments." *Id.* §§ 1344(a)(1), 1332(3), 1334(a). OCSLA further directs that offshore development shall be "subject to environmental safeguards," consistent with "national needs," and operations should be conducted so as to "prevent or minimize … damage to the environment." *Id.* § 1332(3), (6); First Am. Compl. for Declaratory & Inj. Relief ("Compl.") ¶ 26, Dkt. 37.

Under this framework, OCSLA Section 12(a) provides that "[t]he President of the United States may, from time to time, withdraw from disposition any of the unleased lands of the outer Continental Shelf." 43 U.S.C. § 1341(a). As Defendants acknowledge, this provision "allow[s] the President to reserve areas of the OCS from disposition by leasing, including for oil and gas development." Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Br.") 5, Dkt. 42-1; *see League of Conservation Voters v. Trump*, 363 F.Supp.3d

---

[1] Bureau of Ocean Energy Management, Outer Continental Shelf, https://www.boem.gov/oil-gas-energy/leasing/outer-continental-shelf.

Pls.' Opp. to Defs.' Mot. to Dismiss
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 10 of 43

1013 (D. Alaska 2019), *vacated and remanded sub nom.*, *League of Conservation Voters v. Biden*, 843 F. App'x 937 (9th Cir. 2021).

For areas not withdrawn, OCSLA establishes four distinct stages for oil and gas development: (1) the development of a five-year, national offshore leasing program, (2) issuance of oil and gas leases, (3) approval of lessees' exploration plans, and (4) approval of lessees' development and production plans. 43 U.S.C. §§ 1337, 1340, 1344, 1351; 30 C.F.R. Parts 550, 551; Compl. ¶ 28. Certain activities, such as seismic exploration, can occur before or during these stages in accordance with regulations established pursuant to the Secretary of the Interior's rulemaking authority. 43 U.S.C. §§ 1334(a), 1340(a), (b), (g); *see also* 30 C.F.R. Parts 550, 551; Compl. ¶ 29.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Presidential Withdrawals Under Section 12(a)

There is a long history of presidential withdrawals from oil and gas leasing under OCSLA, both permanent and time-limited, dating back to 1960 when President Eisenhower withdrew areas of the Key Largo Coral Reef Preserve. Compl. ¶ 59. Since then, Presidents Nixon (through his Secretary of the Interior), George H.W. Bush, Clinton, George W. Bush, Obama, Biden, and even President Trump have issued withdrawals. *Id*. Some of these covered large areas: President Clinton's withdrawals covered 300 million acres, while President Biden's withdrawals covered more than 625 million acres. *Id*.

Until 2017, no president had ever attempted to undo or reverse a permanent withdrawal of OCS areas. Compl. ¶ 60. However, on April 28, 2017, President Trump

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 48     Filed 07/08/25     Page 11 of 43

issued Executive Order 13795 that purported to revoke withdrawals that President Obama had made in the Northern Bering Sea and the Atlantic and Arctic Oceans in 2015 and 2016. *Id*. ¶¶ 61–64.

On May 3, 2017, several organizations challenged President Trump's attempt to revoke the withdrawal of these OCS areas as violating the Property Clause of the U.S. Constitution and as *ultra vires* in a complaint filed in this Court. Compl. ¶ 66. As here, Defendants and Intervenors filed motions to dismiss the action on jurisdictional grounds, alleging that: "(1) the Federal Defendants are immune from suit under sovereign immunity; (2) Plaintiffs do not have a private right of action; (3) a court cannot issue declaratory relief against the President of the United States; and (4) Plaintiffs lack Article III standing." *League of Conservation Voters*, 303 F.Supp.3d at 993. This Court denied the motions to dismiss on all grounds. *Id*. at 993–1001.

On March 29, 2019, the Court issued a merits decision finding that Section 12(a) of OCSLA did not authorize President Trump to revoke a prior withdrawal and thereby vacated the relevant portion of Executive Order 13795. *League of Conservation Voters v. Trump*, 363 F.Supp.3d at 1020–31. The Court also affirmed its prior ruling on jurisdictional issues. *Id*. at 1019–20.

Defendants and Intervenors appealed this decision to the Ninth Circuit. Compl. ¶ 67. However, prior to a decision on the merits, President Biden issued Executive Order No. 13990 on January 20, 2021. *Id*.; *see* 86 Fed. Reg. 7037 (Jan. 25, 2021). Among other items, Executive Order 13990 exercised President Biden's 12(a) authority to reinstate President Obama's withdrawals and also revoked Executive Order 13785. Compl. ¶ 67.

Based on these developments, the court held that the case was moot. *Id.*; *League of Conservation Voters v. Biden*, 843 F. App'x 937, 938 (9th Cir. 2021).

## II. President Biden's Section 12(a) Withdrawals

During his term in office, President Biden exercised his authority under Section 12(a) on two occasions relevant to this action. Compl. ¶¶ 69-70. On March 13, 2023, President Biden issued a memorandum withdrawing remaining areas of the Beaufort Sea in the Arctic Ocean not previously withdrawn from oil and gas leasing. *Id.* Among other rationales, President Biden stated that the withdrawal was "[c]onsistent with principles of responsible public stewardship" and "with due consideration of the irreplaceable marine and coastal environments—including for marine mammals, other wildlife, wildlife habitat, scientific research, and Alaska Native subsistence use" and "the vulnerability of the ecosystems and coastal communities, where limited or no oil and gas development has yet occurred." *Id.*

On January 6, 2025, President Biden issued two memoranda to withdraw OCS areas in the Pacific Ocean, the Atlantic Ocean, the Eastern Gulf of Mexico and small portions of the Central Gulf of Mexico, and the Northern Bering Sea in Alaska. Compl. ¶ 70. In the memoranda, President Biden stated that these withdrawals were "[c]onsistent with principles of responsible public stewardship, and with due consideration of the irreplaceable marine and coastal environments, including wildlife and wildlife habitat, of" the withdrawn areas, "and independently with due consideration of the vulnerability of these ecosystems and coastal communities, where limited or no oil and natural gas development has yet occurred, to oil spills." *Id.*

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 13 of 43

The OCS areas protected by President Biden are globally significant marine environments that provide habitat for numerous imperiled species as well as areas for commercial and recreational fishing, tourism, and recreation. Compl. ¶¶ 31–34. In Alaska, the OCS areas contain a rich array of unique wildlife species including polar bears, walruses, whales, seals, and numerous other mammals, birds, and fish, some of them classified as threatened or endangered. *Id*. ¶ 31. Some of these animals also support thriving indigenous Alaska Native cultural and subsistence activities. *Id*.

In the Pacific Ocean, federal OCS waters contain an extremely rich and diverse array of marine species, making them ideal places for viewing whales, sea otters, seals, sea lions, sea turtles, seabirds and other wildlife. Compl. ¶ 32. Species such as the gray whale span the entire Pacific coast, making an annual migration of more than 10,000 miles between their wintering and calving areas in Baja California, Mexico and their summer feeding grounds in the northern Bering and Chukchi seas in Alaska. *Id*. California's direct ocean-based economy is nationally significant for tourism, marine transport, recreation, and commercial and recreational fisheries. *Id*.

In the Atlantic, OCS waters are also home to important and sensitive marine species and constitute an environment still very largely unmarked by industrial development. Compl. ¶ 33. Among their unique and outstanding geological features are dozens of undersea canyons, some of them 100 miles long and deeper than the Grand Canyon, rich in marine life. *Id*. Businesses along the U.S. Atlantic coast— including fishing, tourism, and recreation industries—are heavily dependent on the health of this ocean ecosystem and are major contributors to the region's economy. *Id*.

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 14 of 43

The Gulf of Mexico is one of the most productive and biodiverse ecosystems in the United States, providing a home to thousands of species ranging from simple invertebrates to highly evolved marine mammals including dolphins and whales. Compl. ¶ 34. The Gulf includes habitat for five of the world's seven species of sea turtles and is the exclusive home of the critically endangered Rice's whale, a species that scientists estimate may have only 50 individuals remaining. *Id*. Millions of people who live in Gulf Coast states depend on this productive marine environment to support coastal fisheries, tourism, and recreational opportunities. *Id*.

Oil and gas exploration and development in withdrawn OCS regions presents a significant threat of irreparable harm to these sensitive resources. Compl. ¶ 35–47. Noise from seismic blasts and air guns, vessel strikes, air and water pollution, and oil spill events like Exxon Valdez, Deepwater Horizon, and Refugio Beach have devastated local economies, harmed coastal environments, and caused loss of life and even extinction to sensitive and federally protected wildlife. *Id*.

## III. President Trump's Latest Attempt to Reverse 12(a) Withdrawals and Expedite Oil and Gas Development in the OCS

On January 20, 2025, President Trump issued Executive Order 14148 entitled "Initial Rescissions of Harmful Executive Orders and Actions" that purported to reverse the 12(a) withdrawals made by President Biden for the Beaufort and Northern Bering Seas, Atlantic Ocean, Pacific Ocean, and Eastern and Central Gulf of Mexico. Compl. ¶¶ 3, 30, 74.

As Defendants acknowledge, the purpose of the attempted reversals was to make

Pls.' Opp. to Defs.' Mot. to Dismiss
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 15 of 43

these areas available for oil and gas development. Defs.' Br. 8. Defendant Burgum has already taken several actions to proceed with oil and gas leasing in these areas. Compl. ¶ 75. On February 3, 2025, Secretary Burgum issued Secretarial Order 3420, entitled "Announcing President Trump's Revocation of Former Outer Continental Shelf Withdrawals." Secretarial Order 3420 announced the Department of the Interior's commitment "to the advancement of President Trump's energy policies, including to encourage energy exploration and production on Federal lands and waters, including on the Outer Continental Shelf (OCS)." *Id*. The order instructs that "Bureaus and Offices are to take all actions available to expedite the leasing of the OCS for oil and gas exploration and production." *Id*.

Defendant Burgum also issued Secretarial Order 3417, entitled "Addressing the National Energy Emergency." Secretarial Order 3417 states that the "integrity and expansion of our Nation's energy infrastructure—from coast to coast—is an immediate and pressing priority for the protection of the United States' national and economic security." Compl. ¶ 76. The order directs all Bureaus and Offices of the Department to "identify the emergency authorities available to them, as well as all other legal authorities, to facilitate the identification, permitting, leasing, development, production, transportation, refining, distribution, exporting, and generation of domestic energy resources and critical minerals including, but not limited to, on Federal lands and the Outer Continental Shelf." *Id*.

Further, the Secretary issued Secretarial Order 3418, entitled "Unleashing American Energy." Secretarial Order 3418 restates the administration's goal of

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 16 of 43

"encouraging energy exploration and production on Federal lands and waters, including on the Outer Continental Shelf." Compl. ¶ 77. Included in the order is a directive for Assistant Secretaries to prepare a plan within 15 days to "suspend, revise, or rescind" the current 2024–2029 national offshore leasing program governing OCS oil and gas leasing and to include actions to review the "program for offshore oil and gas leasing to assess the need for changes to meet the Nation's energy goals." *Id.*

On April 18, 2025, Interior announced that it was initiating the process to develop a new five-year leasing program. Defs.' Br. 9 n.4. According to the Federal Register notice requesting information and comments on this program, Interior reiterated President Trump's desire to "encourage energy exploration and production on federal lands and waters, including on the [OCS]." 90 Fed. Reg. 17972, 17973 (Apr. 30, 2025). The notice states that the "Arctic holds substantial oil and gas potential," and that the Bureau "may receive new [geological and geophysical] permit applications in the near future" in the Atlantic OCS region. *Id.* at 17973–74. Interior further provided that it would "analyze all 27 OCS planning areas, including areas that may be currently unavailable for leasing." *Id.* at 17974.

## STANDARD OF REVIEW

Defendants move to dismiss Plaintiffs' lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting the Court lacks subject-matter jurisdiction. Defs.' Br. 9. A jurisdictional attack under Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial attack accepts the truth of the plaintiff's allegations but asserts that they "are insufficient on their face to invoke federal jurisdiction." *Safe Air*

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 17 of 43

*for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The district court resolves such an attack by accepting the plaintiff's allegations as true, drawing all reasonable inferences in the plaintiff's favor, and determining whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction. *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). A court may consider not only the allegations in the complaint but also documents attached to it and judicially noticeable facts. *CopyTele, Inc. v. E Ink Holdings, Inc.*, 962 F.Supp.2d 1130, 1135-36 (N.D. Cal. 2013) (citing cases); *see* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed").

By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction. *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment and need not presume the truthfulness of the plaintiff's allegations. *Id.*

Defendants cite both standards but never explicitly state which type of attack they are pursuing.[2] Defs.' Br. 9–10. However, Defendants do not dispute the truth of any specific factual allegations in the Complaint and rather contend that the Complaint itself fails to establish this Court's jurisdiction. *See, e.g.*, Defs.' Br. 1 ("The Complaint generally describes impacts that could occur from oil and gas exploration and

---

[2] In the 2017 case, which involved the same jurisdictional challenges, Defendants acknowledged they were bringing a facial attack. *League of Conservation Voters*, 303 F.Supp.3d at 992.

development, but lacks any allegation that such impacts are actually occurring or will imminently occur."). While Defendants introduce the Declaration of Dr. Megan Carr to offer that the Bureau of Ocean Energy Management ("BOEM") has yet to approve any seismic activities in areas withdrawn by President Biden and discuss a 2018 call for information in the nearshore Beaufort Sea, Defs.' Br. 15 & n.8, these statements do not contradict any of Plaintiffs' allegations, which do not assert that such permits have been approved. Consequently, Defendants' jurisdictional challenge is a facial one.

To invoke a federal court's jurisdiction at the pleading stage, a plaintiff needs to provide only "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). Given the "light burden of proof the plaintiffs bear at the pleading stage," Plaintiffs' allegations easily establish this Court's jurisdiction to decide the case. *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017).

## ARGUMENT

There is no merit to the jurisdictional roadblocks raised by Defendants, which were rejected by this Court in prior litigation. Plaintiffs have adequately pled concrete and particularized injuries from President Trump's revocations, and their members face imminent harm from an action that has already taken effect. Because Plaintiffs have standing and this case is constitutionally ripe, Plaintiffs' claims are ripe for review. Sovereign immunity is also no bar, as the Court may determine that presidential action is unlawful and enjoin executive officials other than the President from acting outside their authority to the detriment of Plaintiffs' members' interests. Moreover, Plaintiffs do not need a congressionally authorized cause of action to bring these claims for equitable

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 19 of 43

relief from constitutional violations, nor does supposed lack of final agency action matter, as Plaintiffs do not challenge any agency action under the Administrative Procedure Act.

## I.    Plaintiffs Have Standing to Bring this Action

Defendants' contentions that Plaintiffs' allegations are too general and fail to allege imminent harm from the President's action are baseless and wholly ignore the details in Plaintiffs' Complaint. Defs.' Br. 10-16. Specifically, Plaintiffs' detailed allegations describe the immediate, purposeful effect of removing an absolute bar to new oil and gas leasing and development in protected areas of the OCS. Defendants and industry groups have signaled their intent to undertake oil and gas exploration and development activities in these previously closed areas expeditiously and even on an emergency basis. These activities present a substantial risk of harm to the ocean environment and wildlife in ways that impair Plaintiffs' recreational, aesthetic, commercial, and subsistence interests. Consequently, Plaintiffs' allegations easily clear the "low bar to establish their standing at the pleading stage." *See Attias*, 865 F.3d at 622.

### A.    Legal standard

Plaintiffs are organizations that have associational standing to sue "on behalf of [their] members when [their] members would otherwise have standing to sue in their own right." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). For members to establish standing, they "must show (1) [they have] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 20 of 43

redressed by a favorable decision." *Id*. at 180–81.[3] In environmental cases, plaintiffs may satisfy the injury-in-fact requirement by "aver[ring] that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened" as a result of the challenged conduct. *Laidlaw*, 528 U.S. at 183 (cleaned up).

As the Supreme Court has stated, "each element [of standing] must be supported … with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id*. (cleaned up). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up).

## B. Plaintiffs' Allegations Demonstrate a Concrete and Particularized Injury

Defendants first argue that Plaintiffs' allegations are too general to show a

---

[3] Defendants do not challenge any other elements of Plaintiffs' associational standing, *see* Defs.' Br. 11–16, and Plaintiffs readily meet these elements. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). In particular, safeguarding the Gulf, Atlantic, Pacific, and Arctic Oceans from harmful offshore oil and gas activities is "germane" to Plaintiffs' organizational purposes. *Id.*; *see* Compl. ¶¶ 7–17. Moreover, Plaintiffs' members need not participate in this litigation because none of the claims asserted or the relief sought requires individualized proof. *Hunt*, 432 U.S. at 342-43. Plaintiffs' members' injuries are also fairly traceable to the challenged action and likely to be redressed by a favorable ruling. *See Laidlaw*, 528 U.S. at 180–81; Compl. ¶¶ 20–21, Prayer for Relief ¶¶ 1–5.

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 48     Filed 07/08/25     Page 21 of 43

concrete and particularized injury because they fail to show exactly which areas of the OCS that their members use and enjoy or plan to visit in the future. Defs.' Br. 11–13. However, on a Rule 12(b) motion to dismiss, courts do not require such specific evidence, but "presume that general allegations embrace those specific facts that are necessary to support the claim." *Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*, 697 F.3d 1192, 1196 (9th Cir. 2012) (alteration omitted) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)); *see also Lujan*, 504 U.S. at 561.

Plaintiffs' allegations satisfy this light burden. *See Pub. Lands for the People*, 697 F.3d at 1195–96. As discussed in the Complaint, Plaintiffs allege that their members use and enjoy affected areas of the Arctic, Pacific, and Atlantic Oceans, and Gulf of Mexico, and adjacent coastal areas, for recreational, aesthetic, subsistence, scientific, and other purposes. Compl. ¶¶ 7–21; *see, e.g., id.* ¶ 19 ("Plaintiffs' members regularly use, enjoy, and benefit from the marine and coastal environments of the nearshore Beaufort Sea, Atlantic Ocean, Pacific Ocean, and Eastern and Central Gulf of Mexico and plan to continue doing so in the future."). As Plaintiffs further allege, President Trump's revocation of the OCS withdrawals made by President Biden harms these interests because it seeks to encourage oil and gas exploration or development that will destroy, degrade, or diminish the wild and natural state of these areas. Compl. ¶¶ 7–21; *see, e.g., id.* ¶ 20 (activities allowed by Executive Order 14148 "will degrade affected OCS areas and adjacent coastal environments and harm wildlife, their habitats, and the interests of Plaintiffs and their members."). These oil and gas activities include seismic surveying,

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
Case 3:25-cv-00038-SLG     Document 148     Filed 07/08/25     Page 22 of 43

which often precedes oil and gas lease sales by several years and poses immediate and severe risks to the affected regions and wildlife. *Id.* ¶¶ 18–21, 42–47.

At this stage of the proceedings, these allegations are sufficient to establish a concrete and particularized injury from the challenged action. As the Ninth Circuit recognized in *Center for Biological Diversity v. Kempthorne*, 588 F.3d 701 (9th Cir. 2009), the degree of geographic specificity required depends on the size of the areas that are impacted by the government's action. In that case, the Court held that plaintiffs had standing to challenge a regulation governing the "take" of polar bears across the entire Beaufort Sea and neighboring coastal areas, with no need to identify the overlap of specific projects with specific areas plaintiffs used, because the effects of the regulation extended—and were felt by plaintiffs—across a broad geographic area (i.e., everywhere polar bears roam). *Id.* at 707–08.

Similarly, in *League of Conservation Voters*, this Court noted that "the area impacted by the Executive Order is 128 million acres located in the Arctic and Atlantic Oceans," and plaintiffs alleged "that they visit or otherwise use and enjoy the Atlantic Ocean, including near deepwater canyons, the Chukchi and Beaufort Seas, and coastal regions adjacent to these waters." *League of Conservation Voters*, 303 F.Supp.3d at 1000 (cleaned up). As the Court found, "[a]lthough the geographic area is very large, it is discrete and defined. Therefore, Plaintiffs have alleged a sufficiently specific geographic area for their alleged harms for Article III standing." *Id.*

The cases cited by Defendants do not arise in the context of a motion to dismiss at the pleading stage and are otherwise easily distinguishable. Defs.' Br. 11–13. In

*Kunaknana v. U.S. Army Corps of Engineers*, 23 F.Supp.3d 1063 (D. Alaska 2014), plaintiffs challenged a site-specific development drilling proposal, the effects of which were confined to a relatively small geographic area surrounding the project. *Id*. at 1084. Unremarkably, this Court held that plaintiffs lacked standing when, on a motion for summary judgment, they failed to show that their members had plans to use areas affected by the development project. *Id*. at 1082–84. By contrast, the Court concluded that other plaintiffs, who used the areas affected by the project (as Plaintiffs here allege their members do), did demonstrate standing. *Id*. at 1084–85.

In *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), the challenged decision—a regulation exempting small post-fire timber-salvage projects from certain public notice and appeal procedures—affected only specific and relatively small geographic areas, and plaintiffs lacked standing because they did not establish their use of those affected areas at the summary judgment stage. *Id*. at 490, 495–96. Similarly, in *Wilderness Society, Inc. v. Rey*, 622 F.3d 1251 (9th Cir. 2010), plaintiffs brought a facial challenge to U.S. Forest Service regulations governing notice, comment, and appeal procedures for projects and activities implementing land and resource management plans. *Id*. at 1253. After reviewing a member declaration filed by plaintiffs at the summary judgment stage, the court found that the declarant did not allege that his recreational and aesthetic interests in Oregon's Umpqua National Forest were threatened by a specific project, which had not been approved at the time the complaint was filed. *Id*. at 1256–57.

In sum, none of these cases apply here, where—at the pleading stage—Plaintiffs have sufficiently alleged that they use the affected areas and that their interests and use of

those areas are harmed by the removal of protections that would otherwise prevent future oil and gas exploration and development.

### C. Harm Is Imminent Now that the Withdrawn OCS Areas Are Available for Oil and Gas Exploration and Development

Defendants also raise several contentions that Plaintiffs' alleged injuries are "insufficiently imminent," each of which lack merit. Defs.' Br. 14–16. As an initial matter, the Supreme Court has made it clear that "imminence" is "concededly a somewhat elastic concept," *Lujan*, 504 U.S. at 564 n.2, and a "substantial risk" of future harm can be sufficient to support standing. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153 (2010); *Susan B. Anthony List*, 573 U.S. at 158 ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." (citation omitted)); *see Nw. Requirements Utils. v. FERC*, 798 F.3d 796, 805 (9th Cir. 2015) ("A future injury need not be 'literally certain,' but there must be a 'substantial risk' that it will occur." (citations omitted)).

The imminence inquiry is a practical one, guided by common sense. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 6 (D.C. Cir. 2017); *Nat. Res. Def. Council v. EPA*, 755 F.3d 1010, 1017 (D.C. Cir. 2014) (deeming it "a hardly-speculative exercise in naked capitalism to predict that facilities would take advantage of" a challenged rule loosening regulatory restrictions (cleaned up)). Courts may consider, for example, actors' motivation and past conduct. *See, e.g.*, *Attias*, 865 F.3d at 628–29 (holding that plaintiffs whose personal medical insurance accounts had been hacked were at substantial risk of injury because, as a

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
Case 3:25-cv-00038-SLG     Document 48     Filed 07/08/25     Page 25 of 43

general matter, hackers are motivated, "sooner or later," to file false claims or perpetrate identity theft (citation omitted)); *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982) (finding injury-in-fact based on nursing homes' past conduct in discharging residents and the threat that they would repeat the behavior in the future); *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019) (citing evidence of past behavior to establish injury-in-fact).

Under this standard, Plaintiffs' Complaint adequately alleges a substantial risk of future harm from the challenged action. Defendants' primary contention is that Plaintiffs fail to allege "any future oil and gas activity in these areas" that would affect their interests. Defs.' Br. 14–15.[4] However, the facts as alleged in the Complaint adequately support Plaintiffs' allegations that there is an imminent risk of harm from President Trump's actions.

In particular, Defendants' actions since the first day of President Trump's second term, industry statements, and past conduct all demonstrate that the attempted revocation of the permanent protections provided by the withdrawals poses imminent harm to Plaintiffs' members from OCS oil and gas exploration and development. On January 20, 2025, President Trump not only issued Executive Order 14148 undoing President Biden's

---

[4] Defendants also claim that "much" of the areas withdrawn by President Biden "remain withdrawn" pursuant to earlier actions taken by President Trump. Defs.' Br. 14. Yet Defendants only identify a few specific areas—the Eastern Gulf, South Atlantic and Straits of Florida Planning Areas, and North Carolina portion of the Mid-Atlantic Planning Area—which were withdrawn by President Trump in September 2020 and remain withdrawn through 2032. In other words, Defendants believe that most of the OCS is now available for oil and gas leasing. *See id.* ("To be sure, some areas in the Mid-Atlantic, North Atlantic, and the Pacific are no longer withdrawn due to President Trump's 2025 Order.").

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 26 of 43

withdrawals, but also issued an executive order entitled "Unleashing American Energy" which declared that "[i]t is the policy of the United States … to encourage energy exploration and production on Federal lands and waters, including on the Outer Continental Shelf, in order to meet the needs of our citizens and solidify the United States as a global energy leader long into the future." Compl. ¶¶ 56, 71.

As discussed above, Defendant Burgum has already issued a series of Secretarial Orders to implement this policy. Compl. ¶¶ 75–77. Secretarial Order 3420 states the Department's commitment to "encourage energy exploration and production on Federal lands and waters, including on the [OCS]," and directs the Department to "take all actions available to *expedite the leasing of the OCS for oil and gas exploration and production*." *Id*. ¶ 75 (emphasis added). Secretarial Order 3417 directs all Bureaus and Offices of the Department to "identify the *emergency* authorities available to them, as well as all other legal authorities, *to facilitate the identification, permitting, leasing, development, production … and generation of domestic energy resources* and critical minerals including, but not limited to, on Federal lands and the Outer Continental Shelf." *Id*. ¶ 76 (emphasis added). Moreover, Secretarial Order 3418 highlights the administration's goal of "encouraging energy exploration and production on Federal lands and waters, including on the Outer Continental Shelf" and ordered the preparation of a new national offshore leasing program. *Id*. ¶ 77.

The administration's announcement of a new five-year leasing program restates President Trump's desire to "encourage energy exploration and production on federal lands and waters, including on the [OCS]." 90 Fed. Reg. at 17973, and commits Interior

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 27 of 43

to "analyz[ing] all 27 OCS planning areas, including areas that may be currently unavailable for leasing." *Id.* at 17974. Defendants also specifically acknowledge that they "may receive new [geological and geophysical] permit applications in the near future" in the Atlantic OCS region. *Id.*

Industry has also expressed interest in exploring and developing oil and gas in these reopened OCS areas. Following these actions, Intervenor American Petroleum Institute ("API") applauded President Trump "for moving swiftly to chart a new path where U.S. oil and natural gas are embraced, not restricted." Compl. ¶ 57. In two separate cases challenging President Biden's withdrawals, API and other industry groups have claimed "clear and unquestionable" harm from being prevented from actively exploring OCS areas and leasing them for oil and gas development. *Id.* ¶¶ 72–73.[5]

Harm from seismic surveys is one of the first and most harmful impacts that will result from reopening OCS areas to oil and gas development. Compl. ¶ 42. Seismic surveying is often conducted two to four years prior to lease sales to identify areas with promising oil and gas prospects, although companies also have sought approval to conduct seismic surveys even when lease sales are more than four years away and not included in an existing or proposed national offshore leasing program. *Id.*

Seismic surveys typically deploy arrays of airguns, which are towed behind ships across broad swaths of the ocean. Compl. ¶ 43. Seismic airgun arrays fire intense blasts

---

[5] Defendants' statements regarding prior federal leasing in the Beaufort Sea, *see* Defs.' Br. 15 n.9, do not refute Plaintiffs' allegations regarding the substantial industry interest in the State of Alaska's 2024 lease sale in this area. Compl. ¶ 47.

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 28 of 43

of energy into the water about every 10 to 12 seconds for days, weeks, or months at a time depending on the length of the survey. *Id*. A large seismic array can produce effective levels of sound—above 250 decibels—greater than that of virtually any other man-made source, save explosives. *Id*. These noise blasts penetrate deep into the seafloor and rebound to the surface for analysis, with potentially devastating impacts on marine life. *Id*. ¶¶ 43–45. For example, in July 2014, when Interior opened federal waters in the Mid- and South Atlantic to seismic oil and gas exploration, it estimated that these activities could result in as many as 138,000 injuries and 13.4 million disturbances of marine mammals, including disruptions in vital behaviors such as feeding and mating, over the first nine years. *Id*. ¶ 44.

Furthermore, past practice confirms the immediacy of the threat. In 2017, following President Trump's prior attempt at revoking Section 12(a) withdrawals, Interior called for expedited consideration of seismic survey permits, a streamlined permitted approach for such activities, as well as immediate development of a new national offshore leasing program to open up previously excluded areas. Compl. ¶ 65. In the Atlantic, at least six seismic operation companies applied for permits to conduct deep-penetration seismic surveys, while at least one company applied for a permit to conduct a 3-Dimensional (3D) seismic survey in federal waters offshore Huntington Beach, California. *Id*. ¶ 51. Concurrently, several seismic firms applied to the National Marine Fisheries Service ("NMFS") for authorization to injure and harass marine mammals during their activities. *Id*.

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
21
Case 3:25-cv-00038-SLG   Document 48   Filed 07/08/25   Page 29 of 43

Based on similar allegations, this Court in *League of Conservation Voters* determined that plaintiffs had shown an imminent risk of harm from President Trump's revocation of President Obama's Section 12(a) withdrawals. *League of Conservation Voters*, 303 F.Supp.3d at 997–99. As the Court held:

> The Executive Order's clear intent to expedite energy production in the Arctic and Atlantic Oceans, the oil industry's eagerness to obtain seismic surveying permits, and the fact that seismic surveying typically precedes oil and gas lease sales, together indicate that Plaintiffs have adequately alleged a substantial risk of harm from the passage of Executive Order 13795 that is 'imminent' for purposes of Article III standing.

*Id*. at 999.

To the extent the government's brief mentions seismic exploration, it argues that it is not imminent because Plaintiffs do not identify specific permit applications and such activities would need to be approved by Interior. Defs.' Br. 15. But those contingencies do not make seismic surveys unlikely or otherwise defeat imminence. As discussed above, Defendants are seeking to expedite oil and gas exploration on the OCS and expect seismic permit applications "in the near future." *See supra* at 20–21. As this Court held in *League of Conservation Voters*, "although third parties must obtain permits before seismic surveying and other activities may occur, there is no indication that the government will not promptly grant such permits, particularly in light of the Executive Order's stated purpose of expediting energy production." *League of Conservation Voters*, 303 F.Supp.3d at 997; *see also Blum*, 457 U.S. at 1000 (finding plaintiff established injury-in-fact notwithstanding uncertain future contingencies based on third-party actions); *City of Oakland v. Lynch*, 798 F.3d 1159, 1164 (9th Cir. 2015) (finding plaintiff

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 2:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 30 of 43

established injury-in-fact where its harm—lost tax revenue from a marijuana dispensary—depended on a series of uncertain contingent future events), *cert. denied*, 577 U.S. 1218 (2016); *Carpenters Indus. Council*, 854 F.3d at 7 (recognizing harm contingent on timber companies' future inability to find sources to replace lost timber from land designated as critical habitat).[6] The same reasoning applies here.

## II. Plaintiffs' Legal Claims Are Ripe for Review

There is no merit to Defendants' argument that Plaintiffs have failed to plead ripe claims. Defs.' Br. 16–19. Because Plaintiffs have adequately alleged an injury in fact, as discussed above, this case is constitutionally ripe. *See Project Veritas v. Schmidt*, 125 F.4th 929, 941 (9th Cir. 2025) ("The constitutional component overlaps with the analysis of 'injury in fact' for Article III standing"). As before, the Court should reject Defendants' invitation to decline jurisdiction under the discretionary doctrine of prudential ripeness. *See League of Conservation Voters*, 303 F.Supp.3d at 1001 n.115. As the Ninth Circuit has stated, "prudential ripeness is a disfavored judge-made doctrine that 'is in some tension with [the Supreme Court's] recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually

---

[6] Defendants also claim that "any actual oil and gas development" in these areas "is likely at least a couple of years away." Defs.' Br. 15–16. However, Plaintiffs' claims regarding imminence are not focused on this future oil and gas development. In any event, the fact that such development is not occurring immediately does not prevent a showing of imminent harm. *See, e.g.*, *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regul. Comm'n*, 100 F.4th 1039, 1054 (9th Cir. 2024) (finding substantial risk of future harm based on likelihood of nuclear power plant continuing operations past its initial 40-year license term).

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 31 of 43

unflagging.'" *Fowler v. Guerin*, 899 F.3d 1112, 1116 n.1 (9th Cir. 2018) (quoting *Susan B. Anthony List*, 573 U.S. at 167).

Should the Court decide to consider prudential ripeness, it evaluates two factors— "the fitness of the issues for judicial decision and the hardship of withholding court consideration"—both of which are readily satisfied here. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (cleaned up). First, Plaintiffs' claims are unquestionably fit for judicial review. "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Stavrianoudakis v. U.S. Fish & Wildlife Serv.*, 108 F.4th 1128, 1139 (9th Cir. 2024) (citations omitted). Here, President Trump's executive order is final, and resolution of Plaintiffs' claims turns on purely legal issues: whether that order was *ultra vires* of his statutory and constitutional authority. Compl. ¶¶ 78–89. Defendants identify no "further factual development" that would aid the Court's resolution of these legal questions. How agency officials might make subsequent permitting and leasing decisions in areas covered by the order, *see* Defs.' Br. 17–19, will not clarify the legal question of whether the order itself exceeded the President's authority.

Where, as here, the fitness factors favor immediate review, a court need not even reach the hardship prong. *Chamber of Com. v. Reich*, 57 F.3d 1099, 1101 (D.C. Cir. 1995). Repeating its standing argument, Defendants' primary claim is that no harm will occur to Plaintiffs until Interior takes further steps to authorize oil and gas exploration or development. Defs.' Br. 17. However, as discussed above, Plaintiffs' demonstration of injury-in-fact illuminates the hardship of delaying adjudication given the substantial risk

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 32 of 43
25

of near-term oil and gas activities, including seismic surveys, caused by the President's action. *See supra*, Argument I.C. Review at this stage will also impose no hardship on Defendants or "inappropriately interfere with further administrative action." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998). To the contrary, all parties will benefit from resolution of whether the President's action was lawful, before harmful and costly exploratory activities are allowed to proceed and public resources are expended in deciding whether to schedule lease sales for the areas at issue.

Defendants also assert that the multi-stage nature of oil and gas development under OCSLA renders the claims unripe, relying in part on a D.C. Circuit decision addressing a national offshore leasing program challenge. Defs.' Br. 18–19 (citing *Center for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466 (D.C. Cir. 2009)). But again, Plaintiffs' threatened injuries derive most immediately from seismic surveys, which occur outside of the national offshore leasing program framework and may precede leasing by years, and are caused by the action challenged in this case. *See supra*, Argument I.C. Moreover, the D.C. Circuit in *Center for Biological Diversity* found that plaintiffs' OCSLA-based claims were ripe because the legal violations underlying them—the agency's failure to abide by section 18's prescriptions regarding the promulgation of a leasing program—"are implicated at the initial stage of a leasing program." 563 F.3d at 484. So too with Plaintiffs' claims here. The violations underlying Plaintiffs' claims—the President's failure to act within his constitutional and OCSLA Section 12(a) authority—are implicated now, by the existing order revoking President Biden's withdrawals, not at some later OCSLA stage.

Pls.' Opp. to Defs.' Mot. to Dismiss
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 33 of 43

## III. Sovereign Immunity Does Not Bar Plaintiffs' Claims

As this Court previously found in nearly identical circumstances, which Defendants entirely fail to address, sovereign immunity does not shield the President's action in this case from judicial review. *League of Conservation Voters,* 303 F.Supp.3d at 994 ("[T]he doctrine of sovereign immunity does not apply, and Plaintiffs are not required to demonstrate a Congressional waiver of sovereign immunity in order to bring this suit."). Where sovereign immunity applies, it bars actions against the sovereign for money damages or specific relief, unless Congress waives that immunity. But as the Supreme Court explained decades ago in *Larson v. Domestic & Foreign Commerce Corp.*, there are "two types" of claims for specific relief against federal officials where no waiver is needed. 337 U.S. 682, 690 (1949). The first is "where the officer's powers are limited by statute" and he acts wholly "beyond those limitations" such that "[h]is actions are ultra vires his authority." *Id.* at 689. The second is where an officer "take[s] action in the sovereign's name" that is "claimed to be unconstitutional." *Id.* at 690. In both types of cases, "the conduct against which specific relief is sought is beyond the officer's powers and is, therefore, not the conduct of the sovereign." *Id.* In other words, sovereign immunity need not be waived because it never attached to the challenged action in the first place. As in *League of Conservation Voters*, both *Larson* exceptions to sovereign immunity apply here, and Plaintiffs are not required to demonstrate a waiver. *See League of Conservation Voters*, 303 F.Supp.3d at 994.

The first *Larson* exception applies because President Trump's executive order purporting to reverse the Section 12(a) withdrawals is *ultra vires*. The order's only

Pls.' Opp. to Defs.' Mot. to Dismiss
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG   Document 48   Filed 07/08/25   Page 34 of 43

asserted source of statutory authority is Section 12(a), and Section 12(a) confers no authority on the President whatsoever to revoke existing withdrawals. Compl. ¶¶ 87–88; *League of Conservation Voters v. Trump*, 363 F.Supp.3d at 1020–31. Plaintiffs' challenge to this action therefore fits squarely within the *ultra vires* exception to sovereign immunity because the President acted without any "delegated power." *Larson*, 337 U.S. at 689–90.

There is no support for Defendants' position that it is "questionable" whether the first *Larson* exception can be applied to the President. *See* Defs.' Br. 23. Neither of the two cases Defendants cite for this proposition addresses this question; rather, both cases were decided on other grounds. *See Dalton v. Specter*, 511 U.S. 462, 474 (1994) (conceding "that some claims that the President has violated a statutory mandate are judicially reviewable outside the framework of the APA," but ultimately deciding that the statute at issue committed the decision about whether to close military bases to the "discretion of the President"); *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 112–14 (1948) (finding that the President's approval of international air travel routes is a nonjusticiable political question). Contrary to Defendants' argument, binding precedent on this issue confirms that this exception *can* be applied to the President's actions. In *Murphy Company v. Biden*, the Ninth Circuit found that "whether characterized as *ultra vires* or constitutional, the result is the same: we resolve that [the plaintiff's] claims against the President … are justiciable." 65 F.4th 1122, 1129–30 (9th Cir. 2023), *cert. denied,* 144 S. Ct. 1111 (2024).

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
28
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 35 of 43

Not only can the *ultra vires* exception apply to the President, it also does apply under these facts, where the issue for judicial resolution is not "the correctness or incorrectness" of the decision, "but simply the power of the official, under the statute, to make a decision at all." *Larson*, 337 U.S. at 691 n.12.

The cases cited by Defendants are distinguishable on that basis. In *United States v. Yakima Tribal Court*, the exception did not apply because the plaintiffs challenged as "incorrect" a decision by an official "pursuing his authorized duties," not an action "completely outside his governmental authority." 806 F.2d 853, 859–60 (9th Cir. 1986). And in *Aminoil*, the court held that the agency's determination about whether a certain piece of land was a wetland was not reviewable under the exception because a "simple mistake of fact or law does not necessarily mean that an officer of the government has exceeded the scope of his authority." *Aminoil U. S. A., Inc. v. Cal. State Water Res. Control Bd.*, 674 F.2d 1227, 1233–34 (9th Cir. 1982). By contrast, this is not a case involving an alleged error in an official's discharge of his statutorily authorized duties. The President took a type of action—revoking an existing withdrawal and reopening lands to disposition—that the statute categorically does not authorize. Compl. ¶¶ 81–83, 87–88. OCSLA provides no authority whatsoever for the President's revocation of existing 12(a) withdrawals. *See League of Conservation Voters v. Trump*, 363 F.Supp.3d at 1020–31. Plaintiffs' claims concern "a want of Presidential power," not a mere "abuse of discretion." *Dalton*, 511 U.S. at 474 (quoting *Dakota Cent. Tel. Co. v. South Dakota ex rel. Payne*, 250 U.S. 163, 184 (1919)) (cleaned up). Accordingly, the first *Larson* exception for *ultra vires* actions applies.

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
Case 3:25-cv-00038-SLG     Document 48     Filed 07/08/25     Page 36 of 43

The second *Larson* exception also applies here. Sovereign immunity is "per se" inapplicable to "alleged constitutional violations." *E.V. v. Robinson*, 906 F.3d 1082, 1098 (9th Cir. 2018) (quoting *Yakima Tribal Court*, 806 F.2d at 859, in parenthetical). And Plaintiffs have alleged constitutional violations: the Property Clause of the U.S. Constitution provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States … ." U.S. Const. Art. IV, § 3, cl. 2. The President has the authority to regulate such property only to the limited extent that Congress has delegated that authority to the President. In reversing President Biden's Section 12(a) withdrawals, President Trump intruded on Congress's non-delegated exclusive power under the Property Clause, in violation of the doctrine of separation of powers. Compl. ¶¶ 81–83. Because President Trump's action is "claimed to be unconstitutional," sovereign immunity does not bar Plaintiffs' claims. *See Larson*, 337 U.S. at 690.

Defendants parrot *Dalton*'s warning that claims "simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims," Defs.' Br. 25, but that argument mischaracterizes Plaintiffs' Complaint. Plaintiffs are not asserting a mere "excess or abuse of discretion" granted by a statute. *Dalton,* 511 U.S. at 474 (citation omitted). Rather, Plaintiffs contend that the President arrogated to himself Congress's power under the Constitution. The Ninth Circuit recently recognized that "[w]hile 'an action taken by the President in excess of his statutory authority [does not] necessarily violate[] the Constitution,' [] specific allegations regarding separation of powers may suffice" to provide a reviewable claim. *Murphy Co.*, 65 F.4th at 1130 (alteration in

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
Case 3:25-cv-00038-SLG     Document 48     Filed 07/08/25     Page 37 of 43

original) (quoting *Dalton*, 511 U.S. at 473). And like the plaintiffs in *Murphy*, Plaintiffs here have made specific allegations regarding the President's constitutional violations— namely his intrusion on Congress's Property Clause powers. Compl. ¶¶ 81–83.

In sum, because Plaintiffs challenge an executive action taken without statutory or constitutional authority, sovereign immunity never attached and need not be waived.

## IV. Plaintiffs Do Not Need a Congressionally Bestowed Right of Action

Defendants next assert that Plaintiffs cannot challenge the President's *ultra vires* and unconstitutional action in court without an express, congressionally bestowed cause of action. Defs.' Br. 26-27. However, this argument runs counter to a long line of Supreme Court opinions, as well as this Court's decision in *League of Conservation Voters*. *See* 303 F.Supp.3d at 994 (holding that because "Plaintiffs are not seeking to enforce a federal law … Plaintiffs do not need express Congressional authorization to maintain these causes of action.").

It is well settled that federal courts have traditional equitable authority to remedy "violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 326–27 (2015). This is true for actions claimed to be unconstitutional: "The ability to sue to enjoin unconstitutional actions by … federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Id.* at 327. It is also true for *ultra vires* actions: "Generally, judicial relief is available to one who has been injured by an act of a government official which is in excess of his express or implied powers." *Harmon v. Brucker*, 355 U.S. 579, 581–82 (1958); *see also Larson*, 337 U.S. at 689 ("[W]here [an] officer's powers are

limited by statute, his actions beyond those limitations … are ultra vires his authority and therefore may be made the object of specific relief."). Congress may act to foreclose equitable relief in specific areas, but if it does not, the federal courts remain open to shield a plaintiff from an unconstitutional or *ultra vires* "injurious act by a public officer." *Armstrong*, 575 U.S. at 327–28 (citation omitted).

Consistent with this "long history of judicial review of illegal executive action," *id.* at 327, the Supreme Court routinely entertains claims for equitable relief to remedy constitutional violations and *ultra vires* executive acts without looking for any specific statutory cause of action. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489–91 (2010) (entertaining petitioners' separation-of-powers challenge to the formation of oversight board, despite absence of a statutory cause of action); *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642–43 (2002) (entertaining petitioner's preemption claim against state officials for violation of federal statute, even though "the Act does not create a private cause of action"). The Supreme Court has never held that plaintiffs must show a congressionally bestowed cause of action to challenge *ultra vires* or unconstitutional acts by the executive branch, as Defendants now insist Plaintiffs must here.

Defendants err in their reliance on cases holding that when Congress creates new substantive rights by statute, it must also provide a cause of action before individuals may sue to enforce those rights against other parties. Defs.' Br. 26–27. In *Alexander v. Sandoval*, the Supreme Court held that plaintiffs could not sue to enforce federal disparate-impact regulations against state officials because Congress had evinced no

PLS.' OPP. TO DEFS.' MOT. TO DISMISS
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 48     Filed 07/08/25     Page 39 of 43

intention of making the regulations privately enforceable. 532 U.S. 275, 285–93 (2001); *see also Ball v. Rodgers*, 492 F.3d 1094, 1104 (9th Cir. 2007) (holding that plaintiff may only bring suit to enforce a federal statute if Congress has provided a private right of action); *Lonberg v. City of Riverside*, 571 F.3d 846, 850 (9th Cir. 2009) (similar). Here, by contrast, Plaintiffs do not seek a statutory remedy for the violation of any statutorily created substantive right. Rather, they seek an equitable remedy for harm caused by wholly unauthorized and unconstitutional executive overreach.

Because Plaintiffs do not look to OCSLA or the APA as a source of private substantive rights, it is irrelevant whether those statutes contain "rights-creating language," *Sandoval*, 532 U.S. at 288 (cleaned up). *Contra* Defs.' Br. 27. Section 12(a) of OCSLA is relevant here only because the President asserts—wrongly—that it authorized his order. Plaintiffs likewise do not seek to establish a cause of action under *Larson* where sovereign immunity applies, so Defendants' arguments attack a straw man. *See* Defs.' Br. 27–28. Rather, this case fits squarely in the long line of cases—affirmed in *Armstrong*, *McAnnulty*, and others—recognizing the availability of equitable remedies to prevent harm from unauthorized executive action.

Defendants contend that the Supreme Court has inferred a cause of action "only in instances where individual rights were being infringed." Defs.' Br. 28, but it is unclear what that means. Plaintiffs and their members undeniably have legally protected interests in the enjoyment of public lands and the wildlife inhabiting them. *See supra* Argument I.B; *see also Lujan*, 504 U.S. at 560, 562–63 ("[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest….").

Pls.' Opp. to Defs.' Mot. to Dismiss
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 48    Filed 07/08/25    Page 40 of 43

Defendants fail to explain why these rights differ from any other individual rights, or to substantiate their assertion that protection is limited to "personal property or liberty interests." *See* Defs.' Br. 29; *contra League of Conservation Voters*, 303 F.Supp.3d at 994, 97–98 (finding plaintiffs' interests—identical to those here—to be protectable); *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987) (equitable remedies often appropriate to protect plaintiffs' environmental interests).

Defendants' argument that Plaintiffs' separation-of-powers claim arises under the Property Clause, Defs.' Br. 29, also makes no sense. *See* Compl. ¶ 83. The cases Defendants cite show that the Supreme Court has already found that plaintiffs may sue over this type of violation. In *Free Enterprise Fund*, the petitioners, like Plaintiffs here, sued over harm to their interests stemming from a separation-of-powers violation. 561 U.S. at 487. The Court rejected the same argument Defendants make here: "If the Government's point is that … [a] separation-of-powers claim should be treated differently than every other constitutional claim, it offers no reason and cites no authority why that might be so." *Id.* at 491 n.2. Accordingly, Defendants' argument is foreclosed by Supreme Court precedent, and Plaintiffs need not show a congressionally granted cause of action.

## V. Plaintiffs Sued the Agencies for Purposes of Relief, Not to Challenge a Final Agency Action

Defendants again misstate Plaintiffs' claims when they argue that the supposed lack of final agency action bars relief against the Secretaries of the Interior and Commerce. Defs.' Br. 30–32. Yet Defendants' arguments are irrelevant because Plaintiffs

are not challenging any final agency action under the APA, which is the source of that requirement. Rather, Plaintiffs have alleged that the President's issuance of the executive order was *ultra vires* and unconstitutional. *See supra* Argument III (describing claims); *see also* Compl. ¶¶ 78–89. Injunctive relief is available against subordinate agency officials to prevent them from carrying out such actions. *Swan v. Clinton*, 100 F.3d 973, 979 (D.C. Cir. 1996) (finding that "injunctive relief against such [inferior] officials could substantially redress [the plaintiff's] injury"); *League of Conservation Voters*, 303 F.Supp.3d at 995 (this Court finding the same). Therefore, Plaintiffs' claims and request for relief are proper.

## CONCLUSION

As it has determined before, this Court may review and grant relief for President Trump's attempt to revoke permanent protections for certain areas of the federal OCS—an action beyond the President's statutory and constitutional authority. Consequently, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss.

Respectfully submitted this 8th day of July, 2025.

<div style="margin-left:40%">

*/s/ Erik Grafe*
*/s/ Hannah Payne Foster*
Erik Grafe (AK Bar #0804010)
Hannah Payne Foster (AK Bar #2105045)
Earthjustice
310 K Street, Suite 508
Anchorage, AK 99501
T: (907) 277-2500
egrafe@earthjustice.org
hfoster@earthjustice.org

</div>

Pls.' Opp. to Defs.' Mot. to Dismiss
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG

Case 3:25-cv-00038-SLG     Document 48     Filed 07/08/25     Page 42 of 43

George Torgun (*pro hac vice*)
Brettny Hardy (*pro hac vice*)
Earthjustice
50 California Street, Suite 500
San Francisco, CA 94111
T: (415) 217-2000
gtorgun@earthjustice.org
bhardy@earthjustice.org

Stephen D. Mashuda (*pro hac vice*)
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
T: (206) 343-7340
smashuda@earthjustice.org

*Counsel for Plaintiffs Northern Alaska Environmental Center, Alaska Wilderness League, Oceana, Inc., Surfrider Foundation, Center for Biological Diversity, Healthy Gulf, Turtle Island Restoration Network, and Greenpeace, Inc.*

Devorah Ancel (*pro hac vice*)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
T: (415) 845-7847
devorah.ancel@sierraclub.org

*Counsel for Plaintiff Sierra Club*

Jaclyn H. Prange (*pro hac vice*)
Irene Gutierrez (*pro hac vice*)
Natural Resources Defense Council
111 Sutter St., Fl. 21
San Francisco, CA 94104
T: (415) 875-6100
jprange@nrdc.org
igutierrez@nrdc.org

*Counsel for Plaintiff Natural Resources Defense Council*