ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

LUTHER L. HAJEK (CO Bar # 44303)
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
999 18th Street, North Terrace, Suite 600
Denver, CO 80202
Tel: (303) 844-1376 / Fax: (303) 844-1350
luke.hajek@usdoj.gov

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN ALASKA ENVIRONMEN-TAL CENTER, *et al.*, | No. 3:25-cv-00038-SLG<br>Honorable Sharon L. Gleason |
| Plaintiffs, | |
| v. | **DEFENDANTS' REPLY IN SUP-PORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** |
| DONALD J. TRUMP, President of the United States, *et al.*, | |
| Defendants, | |
| and | |
| AMERICAN PETROLEUM INSTITUTE, *et al.*, | |
| Intervenor-Defendants. | |

*Northern Alaska Environmental Center v. Trump, et al.*　　　No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY IN SUPP. OF MOTION TO DISMISS

Case 3:25-cv-00038-SLG    Document 49    Filed 07/29/25    Page 1 of 25

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 1

ARGUMENT .......................................................................................... 2

I.    Plaintiffs Lack Standing ............................................................ 2

    A.    The Court Must Accept the Unrebutted Facts in the Carr Declaration ........................................................ 2

    B.    Plaintiffs Cannot Establish Standing by Generally Alleging that Their Members Use and Enjoy the 625 Million Acres of the OCS Withdrawn by President Biden .................................. 3

    C.    Plaintiffs Have Not Demonstrated Any Imminent Harm to Their Interests from Oil and Gas Development ............................... 8

II.    Plaintiffs' Claims Are Not Ripe ................................................. 11

III.    Plaintiffs' Claims are Barred by Sovereign Immunity ................................ 13

IV.    Plaintiffs Have Identified No Statutory or Equitable Right of Action ........ 16

V.    Plaintiffs Fail to Identify Any Final Agency Action by the Secretary of the Interior or the Secretary of Commerce ............................................. 19

CONCLUSION ...................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ................................................................................ 16, 18

*Amoco Production Company v. Village of Gambell*,
480 U.S. 531 (1987) ........................................................................................ 18

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015) ........................................................................................ 17

*Center for Biological Diversity v. Kempthorne*,
588 F.3d 701 (9th Cir. 2009) ......................................................................... 4, 5

*Center for Biological Diversity v. U.S. Department of the Interior*,
563 F.3d 466 (D.C. Cir. 2009) ................................................................... 12, 13

*Dalton v. Specter*,
511 U.S. 462 (1994) ................................................................................. 14, 16

*E.V. v. Robinson*,
906 F.3d 1082 (9th Cir. 2018) ................................................................... 15, 19

*Franklin v. Massachusetts*,
505 U.S. 788 (1992) ........................................................................... 13, 15, 16

*Free Enterprise Fund v. Public Company Accounting Oversight Board*,
561 U.S. 477 (2010) ........................................................................................ 17

*Friends of the Earth v. Sanderson Farms, Inc.*,
992 F.3d 939 (9th Cir. 2021) .................................................................. 3, 10, 12

*Harmon v. Brucker*,
355 U.S. 579 (1958) ........................................................................................ 17

*Larson v. Domestic & Foreign Commerce Corp.*,
337 U.S. 682 (1949) ........................................................................................ 14

*League of Conservation Voters v. Trump*,
303 F. Supp. 3d 985 (D. Alaska 2018) ........................................... 1, 6, 11, 18

*League of Conservation Voters v. Trump*,
363 F. Supp. 3d 1013 (D. Alaska 2019) ........................................................... 1

*Lujan v. Defs. of Wildlife*,

504 U.S. 555 (1992) ............................................................................... 6, 8

*McCarthy v. United States*,
850 F.2d 558 (9th Cir. 1988) ................................................................. 3

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ............................................................................ 8, 9

*Murphy Co. v. Biden*,
65 F.4th 1 (9th Cir. 2023) ................................................................ 15, 16

*Pennhurst State School & Hosp. v. Halderman*,
465 U.S. 89 (1984) ............................................................................... 14

*Public Lands for the People, Inc. v. U.S. Department of Agriculture*,
697 F.3d 1192 (9th Cir. 2012) ............................................................... 4

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ........................................................... 3, 4

*Secretary of the Interior v. California*,
464 U.S. 312 (1984) .............................................................................. 12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................................ 7

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ....................................................................... 4, 5, 7

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
535 U.S. 635 (2002) .............................................................................. 17

*Warth v. Seldin*,
422 U.S. 490 (1975) ................................................................................ 7

*Whitemore v. Arkansas*,
495 U.S. 149 (1990) ................................................................................ 8

*Wilderness Society v. Rey*,
622 F.3d 1 (9th Cir. 2010) ....................................................................... 7

**Statutes**

43 U.S.C. § 1341(a) ................................................................................. 2

5 U.S.C. § 702 ................................................................................. 13, 19

**Regulations**

90 Fed. Reg. 17,972 (Apr. 30, 2025) ...................................................... 9

Case 3:25-cv-00038-SLG     Document 49     Filed 07/29/25     Page 4 of 25

90 Fed. Reg. 6,739 (Jan. 6, 2025).......................................................................... 2, 5

**Other Authorities**

1978 U.S.C.C.A.N. 1450 ............................................................................................ 12

# INTRODUCTION

The Court should dismiss Plaintiffs' First Amended Complaint, ECF No. 37, for lack of jurisdiction. Plaintiffs lack standing and their claims are not ripe because they fail to identify any imminent harm to their interests. The only harm Plaintiffs assert is environmental harm stemming from potential future seismic surveys. Relying on this Court's ruling in *League of Conservation Voters v. Trump*, 303 F. Supp. 3d 985, 998 (D. Alaska 2018), Plaintiffs argue that these allegations are sufficient to establish standing. But the facts here are distinct from the facts in *League of Conservation Voters*. Many of the areas of the Outer Continental Shelf that President Biden withdrew were already withdrawn on a temporary basis by President Trump, so there is no imminent prospect for seismic surveys in those areas. And Defendants have submitted a declaration showing that there have been no applications for seismic surveys in the remaining areas withdrawn by President Biden. With that unrebutted declaration, Plaintiffs' speculation that some seismic surveys may occur in an area affecting their interests at some point is insufficient to establish standing.

Plaintiffs have also failed to show either a waiver of sovereign immunity or a private right of action, which are both prerequisites to sue the government. While this Court disagreed with similar arguments that the defendants made in *League of Conservation Voters*, the Court's summary judgment ruling, which addressed the same issues, was vacated as moot on appeal. *See League of Conservation Voters v. Trump*, 363 F. Supp. 3d 1013 (D. Alaska 2019), *vacated and remanded sub nom. League of Conservation Voters v. Biden*, 843 Fed. App'x 937 (9th Cir. 2021). The Court should therefore evaluate those issues

afresh based on the arguments presented here.

Finally, the Court should ignore Plaintiffs' efforts to inject merits issues at this stage of the case. Plaintiffs assert that "President Biden permanently withdrew" certain areas of the OCS and that President Trump unlawfully attempted to reverse those permanent withdrawals. Pls.' Opp. to Defs.' Mot. to Dismiss for Lack of Jurisdiction ("Pls.' Opp."), ECF No. 48. But there is nothing in President Biden's withdrawal memoranda indicating that the withdrawals were permanent. *See*, *e.g.*, Withdrawal of Certain Areas of the United States OCS from Oil or Natural Gas Leasing, 90 Fed. Reg. 6,739, 6,739 (Jan. 6, 2025) (withdrawing areas off the coast of Alaska "for a time period without specific expiration"). Moreover, Section 12(a) of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1341(a), does not allow a president to permanently withdraw areas of the OCS from development, and multiple presidents have modified or revoked prior withdrawals. But the Court should only decide those issues if the case reaches the merits stage.

## ARGUMENT

## I.    Plaintiffs Lack Standing.

Plaintiffs lack standing because they have failed to show any imminent harm to their interests from President Trump's rescission of the OCS withdrawals.

### A.    The Court Must Accept the Unrebutted Facts in the Carr Declaration.

To start, Plaintiffs incorrectly assert that Defendants' jurisdictional challenge to their Complaint is only facial, not factual. *See* Pls.' Opp. at 12; *but see* Defs' Mem. at 9-10. But when considering a Rule 12(b)(1) motion, the Court "is not restricted to the face

of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). When defendants dispute factual allegations with affidavits or other evidence, "[t]he party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 944 (9th Cir. 2021) (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).

Defendants offered the Declaration of Dr. Megan Carr, ECF No. 42-2, in support of their motion to dismiss under Rule 12(b)(1). But Plaintiffs chose not to offer any declaration or other evidence to rebut the facts asserted in the Carr Declaration, so those facts stand unrebutted. The Court must therefore consider the unrebutted facts in the Carr Declaration when resolving this motion. That is significant because Plaintiffs rely heavily on the assertion that their members' interests in the environment are in danger of imminent harm due to seismic surveys, but the Carr Declaration undermines that assertion. Defendants submitted other information about past withdrawals by President Trump and BOEM's Five-Year Program, *see* Defs.' Mem. in Supp. of Mot. to Dismiss. Pls.' First Am. Compl. ("Defs.' Mem.") at 8-9, 14-16, ECF No. 42-1, which should be considered as well.

**B.  Plaintiffs Cannot Establish Standing by Generally Alleging that Their Members Use and Enjoy the 625 Million Acres of the OCS Withdrawn by President Biden.**

Plaintiffs' allegations of potential harm to their interests are too general to survive at the pleading stage. As they acknowledge, Plaintiffs allege only that their "members

*Northern Alaska Environmental Center v. Trump, et al.*      No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS                                    3

Case 3:25-cv-00038-SLG     Document 49     Filed 07/29/25     Page 8 of 25

regularly use, enjoy, and benefit from the marine and coastal environments of the nearshore Beaufort Sea, Atlantic Ocean, Pacific Ocean, and Eastern and Central Gulf of Mexico and plan to continue doing so in the future." Pls.' Opp. at 15 (quoting Compl. ¶ 19). They allege that such use and enjoyment of this vast 625 million-acre area of the OCS will be harmed by oil and gas development activity, including seismic surveys. *See id.* But even under the lenient standard at the pleading stage, this is not enough to establish standing because Plaintiffs have not alleged the areas of the OCS they use nor described how those areas may be affected by oil and gas activities.

Relying on *Public Lands for the People, Inc. v. U.S. Department of Agriculture*, 697 F.3d 1192, 1196 (9th Cir. 2012), Plaintiffs argue that they have only a "light burden" to establish standing at the pleading stage. Pls.' Opp. at 15. But even though that burden is lighter at the pleading stage than later stages, Plaintiffs must still allege a "concrete and particularized" injury. *Pub. Lands for the People*, 697 F.3d at 1196 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Plaintiffs have failed to meet even that lighter burden here because they have not identified the parts of the OCS their members may use and enjoy. Unlike here, the plaintiff miners in *Public Lands for the People* identified particular locations where their rights were being affected. *See* 697 F.3d at 1196 ("Miners have suffered an injury in fact because they can no longer access their mining claims via motor vehicles without first filing a Notice of Intent or Plan of Operations.").

Plaintiffs' reliance on *Center for Biological Diversity v. Kempthorne*, 588 F.3d 701 (9th Cir. 2009), fares no better. There, the court ruled that an environmental group had

*Northern Alaska Environmental Center v. Trump, et al.*      No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS      4

Case 3:25-cv-00038-SLG     Document 49     Filed 07/29/25     Page 9 of 25

standing to challenge a rule regarding the protection of the polar bear based on allegations that their members "have viewed polar bears and walrus in the Beaufort Sea region, enjoy doing so, and have plans to return." *Id.* at 707-08. Allegations of this sort—individual members asserting specific plans to engage in a particular activity in a certain area—are often sufficient to support standing in an environmental case. *See Summers*, 555 U.S. at 494 ("While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice."). But Plaintiffs' Complaint lacks any similar allegations about the effects on their specific recreational activities in particular locations in the OCS. Instead, Plaintiffs ask the Court to accept their vague allegation that their members use and enjoy the Beaufort Sea region, but also millions of acres of the OCS off the East and West Coasts and in the Gulf of America.

Plaintiffs' arguments also gloss over the fact that they challenge President Trump's rescission of three separate withdrawals made by President Biden: the Beaufort Sea Planning Area (March 13, 2023), ECF No. 44-1; the Bering Sea Climate Resilience Area, 90 Fed. Reg. 6,739 (Jan. 6, 2025); and planning areas on the West and East Coast and the Gulf of America, 90 Fed. Reg. 6,743 (Jan. 6, 2025). To establish standing, Plaintiffs must show that their members plan to visit all those areas because each was a separate action that was revoked by President Trump. But Plaintiffs make no effort to allege that any of their members have interests in the Bering Sea area that would be affected by President Trump's revocation of that withdrawal. *See* Defs.' Mem. at 11 n.6.

*Northern Alaska Environmental Center v. Trump, et al.*      No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS      5

Case 3:25-cv-00038-SLG     Document 49     Filed 07/29/25     Page 10 of 25

Plaintiffs' reliance on this Court's ruling in *League of Conservation Voters* is also misplaced. To the extent the Court ruled that it is sufficient for a plaintiff to allege that its members use and enjoy 128 million acres of the OCS off the coast of Alaska and in the Atlantic Ocean without providing any specifics, Defendants respectfully disagree that such a ruling is consistent with *Summers* or *Center for Biological Diversity*. Nor is there any basis for extending the reasoning in *League of Conservation Voters* to this case, which involves *625 million acres* distributed throughout the Gulf of America and offshore Alaska and the East and West Coasts. Moreover, a close reading of *League of Conservation Voters* reveals that the plaintiffs provided at least *some* specifics about the plans of their members to "visit or otherwise use and enjoy the Atlantic Ocean, including near deepwater canyons, the Chukchi and Beaufort Seas, and coastal regions adjacent to these waters." 303 F. Supp. 3d at 1,000. In other words, it is not just the large area that undermines Plaintiffs' allegations of standing, but also the fact that they have offered no specifics about their members' planned activities in any particular location on the OCS.

Plaintiffs' efforts to distinguish *Summers* and other cases cited by Defendants are unavailing. Plaintiffs argue that these cases can be distinguished because they were decided at the summary judgment stage, rather than at the motion to dismiss stage. *See* Pls.' Opp. at 16-17. Although the degree of proof required to support allegations of standing changes depending on the stage of the case, the required level of detail does not. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("Since they are not mere pleading require-

ments but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."). Even "at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). Plaintiffs cannot avoid the need to allege specific facts regarding their interests at the pleading stage.

*Summers* highlights the inadequacy of Plaintiffs' standing allegations. As here, the challenged action—U.S. Forest Service regulations governing forest fire management—covered a very large area, 190 million acres. *See* 555 U.S. at 495. And *Summers* held that the plaintiff could not simply assert in a declaration that he had "visited many national forests and plan[ned] to visit several unnamed national forests in the future." *Id.*; *see also Wilderness Society v. Rey*, 622 F.3d 1,251 (9th Cir. 2010) (plaintiffs could not establish standing to challenge a Forest Service rule without showing that their interests in a particular location of the national forest would be affected). Likewise, Plaintiffs cannot merely assert that they plan to use and enjoy some area within 625 million acres of the OCS.[1] Such

---

[1] To put a finer point on it, 625 million acres spans about 976,563 square miles. This is roughly equivalent to the total area (land and water) of all the states within the Ninth Circuit (except Alaska), as well as Utah and Colorado, which cover 988,466 square miles. *See* U.S. Census Bureau, *State Area Measurements and Internal Point Coordinates*, https://www.census.gov/geographies/reference-files/2010/geo/state-area.html (last visited Jul 29, 2025). Plaintiffs could not establish standing based on a general allegation that their plans to use, enjoy, and visit some unknown part of these ten western states—Arizona, California, Colorado, Hawaii, Idaho, Montana, Nevada, Oregon, Utah, Washington—

allegations are far too general to establish standing.

### C. Plaintiffs Have Not Demonstrated Any Imminent Harm to Their Interests from Oil and Gas Development.

Even if Plaintiffs had sufficiently alleged an interest in particular areas of the OCS, they fail to show that any such interests will be imminently harmed by any oil and gas development activities on the OCS in the previously withdrawn areas. Because they fail to demonstrate that any oil and gas activities, including seismic surveys, are imminent, they fail to meet this element of the standing inquiry.

Partially quoting *Lujan*, Plaintiffs argue that imminence is an "elastic concept." Pls.' Opp. at 18 (quoting *Lujan*, 504 U.S. at 564 n.2). But they take only a snippet from a sentence which reads, "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is '*certainly* impending.'" (quoting *Whitemore v. Arkansas*, 495 U.S. 149, 158 (1990)). But "imminence" cannot be stretched as far as Plaintiffs ask because they allege only "an injury at some indefinite future time." *Id.* Nor does it help Plaintiffs arguments that the Supreme Court has said plaintiffs may show a "substantial risk" of harm. *See* Pls.' Opp. at 18-19 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153 (2010)). In *Monsanto*, there was a substantial risk that

---

would be affected by non-specific oil and gas development activities somewhere "out West." The same is true here.

genetically modified crops would affect nearby conventional crops—the fact that such contamination was not a certainty did not prevent the plaintiffs from establishing standing. *See id.* at 153-54. But similar allegations of activities that have a "substantial risk" of harming Plaintiffs' interests are missing here.

Plaintiffs attempt to elide the fact that some of the areas withdrawn by President Biden remain withdrawn through the middle of 2032 under temporary withdrawals authorized by President Trump. *See* Pls.' Opp. at 19 n.4. Plaintiffs dismiss this fact as unimportant and argue that "most of the OCS is now available for oil and gas leasing." *Id.* But the entire Eastern Gulf—an area where there is likely industry interest in leasing if it is reopened—is still off limits to oil and gas development. *See* https://www.boem.gov/oil-gas-energy/leasing/areas-under-restriction (last visited July 28, 2025). Most of the eastern seaboard is still off limits as well. *See id.* Therefore, all of Plaintiffs' allegations of harm to their interests in the use and enjoyment of the Gulf and the waters off the East Coast (to the extent they have made such allegations) have been effectively rebutted.

Yet Plaintiffs argue that they face an imminent risk of harm due to the actions of the administration. They point to various executive orders issued by President Trump and secretarial orders issued by Secretary of the Interior Doug Burgum. *See* Pls.' Opp. at 19-20. But none of those orders direct any particular oil and gas activity to occur, nor have Plaintiffs identified any action resulting from those orders. Plaintiffs also point to BOEM's announcement that it intends to develop a new five-year leasing program. *See* Pls.' Opp. at 20-21; *see also* 90 Fed. Reg. 17,972 (Apr. 30, 2025). But as Defendants have shown,

*Northern Alaska Environmental Center v. Trump, et al.*          No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS                 9

Case 3:25-cv-00038-SLG     Document 49     Filed 07/29/25     Page 14 of 25

BOEM's current Five-Year Program does not include the areas withdrawn by President Biden. *See* Defs.' Mem. at 8-9. If such areas are ultimately offered in the next five-year program, Plaintiffs may be able to demonstrate standing then, but they cannot establish standing now based on speculation about what that future program may entail.

Recognizing that oil and gas development in the previously withdrawn areas is not imminent,[2] Plaintiffs repeatedly assert that seismic surveys are likely to occur and will harm their interests in the environment. *See, e.g.*, Pls.' Opp. at 15-16, 21-23. As Defendants have shown, however, seismic surveys in the previously withdrawn areas are not imminent. *See* Carr Decl. ¶ 3 ("There are no ongoing or pending applications to conduct [geological and geophysical] exploration activities [in the areas subject to the prior withdrawals]"). Plaintiffs fail to rebut this evidence, so the Court should accept it as true. Against that evidence, Plaintiffs' assertion that seismic surveys are, nevertheless, imminent, *see* Pls.' Opp. at 23, cannot be credited. *See Friends of the Earth*, 992 F.3d at 944 (explaining in the context of resolving a factual jurisdictional challenge under Rule 12(b)(1) that "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.").

---

[2] Plaintiffs essentially concede that there is no imminent harm from actual oil and gas development. *See* Pls.' Opp. at 24 n.6 ("Plaintiffs' claims regarding imminence are not focused on this future oil and gas development.").

*Northern Alaska Environmental Center v. Trump, et al.*　　　　　No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS　　　　　10

Nor is it sufficient for Plaintiffs to rely on general statements by industry or activities that occurred in the past. *See* Pls. Opp. at 21-22. Even if Plaintiffs had offered evidence in the proper form, *i.e.*, through an affidavit, the fact that companies applied for permits to conduct seismic activities in 2017, *id.* at 22, is not a sufficient basis for standing. If Plaintiffs could demonstrate that companies were submitting such applications *now*, that would change the analysis, but Plaintiffs have provided no such evidence or allegations.

Finally, Plaintiffs' arguments find no support in *League of Conservation Voters*. *See* 303 F. Supp. 3d at 1,000-01. In that case, the Court did not have a declaration from an agency official stating that it had received no applications for seismic activities in the area subject to the withdrawal. And the plaintiffs offered at least some evidence of an actual application for seismic activity. *See id.* at 998 ("Plaintiffs allege that one seismic operator has already 'sought federal authorizations to conduct 3-D seismic exploration in the Beaufort Sea nearshore area' . . . ."). But here, Plaintiffs lack any similar evidence of actual seismic activity. For all these reasons, Plaintiffs have failed to show that any of their asserted interests will be imminently harmed by President Trump's rescission of the OCS withdrawals.

## II. Plaintiffs' Claims Are Not Ripe.

Plaintiffs' claims are not ripe for the same reasons they lack standing—they have failed to show that the reopening of some areas of the OCS for oil and gas leasing will cause them any imminent harm. They again rely heavily on the possibility of seismic surveys occurring at some point in the future, *see* Pls.' Opp. at 25-26, but as demonstrated

above, no such surveys are imminent, and Plaintiffs have failed to rebut Defendants' corresponding evidence. Therefore, the Court cannot rely on Plaintiffs' unsupported assertions regarding the alleged likelihood of such surveys. *See Friends of the Earth*, 992 F.3d at 944.

It is also significant that the areas of the OCS in question have not even been offered as part of a five-year program, which is the first of the four-stage OCSLA process for oil and gas development. *See* Defs.' Mem. at 17-19. The Supreme Court has stated that Congress's express purpose in designing the four-stage process "was to forestall premature litigation regarding adverse environmental effects that all agree will flow, if at all, only from the latter stages of OCS exploration and production." *Secretary of the Interior v. California*, 464 U.S. 312, 341 & n.22 (1984); *see also* H.R. Rep. No. 95-500, p. 164 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 1450, 1570 ("[The review at the development and production stage] provides a means to separate the Federal decision to allow private industry to explore for oil and gas from the Federal decision to allow development and production to proceed if the lessee finds oil and gas. The failure to have such a mechanism in the past has led to *extensive litigation prior to lease sales*, when on-shore and environmental impacts of production activity are not yet known." (emphasis added)). Plaintiffs' attempt to raise a claim under OCSLA before areas have even been proposed for leasing—the first stage of the OCSLA process—is contrary to the statutory scheme enacted by Congress.

In addition, *Center for Biological Diversity v. U.S. Department of the Interior*, 563 F.3d 466 (D.C. Cir. 2009), provides no support for Plaintiffs' arguments. In *Center for*

*Northern Alaska Environmental Center v. Trump, et al.*      No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS                              12

Case 3:25-cv-00038-SLG      Document 49      Filed 07/29/25      Page 17 of 25

*Biological Diversity*, the court ruled that OCSLA challenges to a five-year program were ripe for review. *See id.* at 484. But here, BOEM has not even included any of the areas at issue as part of a five-year program. Further, in *Center for Biological Diversity*, the court found that the plaintiffs had demonstrated a particularized harm to their interests—an increased risk of harm to indigenous animals from oil and gas development. *Id.* at 483. Plaintiffs have not demonstrated such an increased risk of harm to their interests in this case because they have not shown that any oil and gas development activities, including seismic surveys, are imminent.

## III. Plaintiffs' Claims are Barred by Sovereign Immunity.

Plaintiffs' claims should be dismissed because they are barred by sovereign immunity, and Plaintiffs fail to show that an applicable waiver of that immunity applies here. They implicitly concede that the requisite waiver cannot be found in the Administrative Procedure Act ("APA") or OCSLA. This is significant because claims challenging government action are typically brought under the waiver of sovereign immunity in the APA, *see* 5 U.S.C. § 702, and this waiver does not apply to actions against the President. *See Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992). The Supreme Court explained that, "[o]ut of respect for the separation of powers and the unique constitutional position of the President, we find that textual silence is not enough to subject the President to the provisions of the APA." *Id.* Here, no statute provides a waiver of sovereign immunity for a suit against the President regarding a decision under Section 12(a) of OCSLA. That should end the inquiry.

*Northern Alaska Environmental Center v. Trump, et al.*            No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS            13

Case 3:25-cv-00038-SLG    Document 49    Filed 07/29/25    Page 18 of 25

Recognizing that the typical waiver of sovereign immunity does not apply, Plaintiffs resort to *ultra vires* review under *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949). But *Larson* preceded the APA by over two decades, and the Supreme Court has characterized *ultra vires* review as a "narrow and questionable exception" to immunity. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 116 (1984). Not only has the Supreme Court questioned this exception, it has not endorsed *ultra vires* review as a proper vehicle for challenging presidential action. In *Dalton v. Specter*, 511 U.S. 462 (1994), the Court accepted "for purposes of [its] decision" that it had jurisdiction to review the President's decision under the Defense Base Closure and Realignment Act of 1990. *Id.* at 472. But the Court also explained that there was a difference, for purposes of judicial review, between statutory claims and constitutional claims. *See id.* at 472 ("If all executive actions in excess of statutory authority were *ipso facto* unconstitutional, … there would have been little need in *Larson* for our specifying unconstitutional and ultra vires conduct as separate categories."). The Court ultimately "assume[d] for the sake of argument that some claims that the President has violated a statutory mandate are judicially reviewable outside the framework of the APA." *See id.* at 474. But that assumption was academic because the Court found that the claim was unreviewable for a different reason—the decision was committed to the President's discretion. *See id.* at 474-76. *Dalton* therefore cannot be read as endorsing judicial review of statutory claims involving the President.

*Northern Alaska Environmental Center v. Trump, et al.*      No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS      14

Case 3:25-cv-00038-SLG      Document 49      Filed 07/29/25      Page 19 of 25

Nor does Ninth Circuit precedent show that Plaintiffs can challenge presidential action under an *ultra vires* theory. *Murphy Co. v. Biden*, 65 F.4th 1,122 (9th Cir. 2023), is distinguishable because the issue was, not whether the President violated a particular statute, but whether his action under one statute violated another statute. *See id.* at 1,130. Thus, the core of the claim was "that the President violated separation of powers by directing the Secretary to act in contravention of a duly enacted law," which the court deemed to be a constitutional claim. *Id.* But the claim that President Trump exceeded his authority under Section 12(a) of OCSLA is a statutory claim, not a separation of powers claim, so *Murphy* is inapplicable. Indeed, the Ninth Circuit cautioned that, "[o]ur resolution should not be read to empower future objectors to frame any unpopular presidential action as '*ultra vires*' and thus open the floodgates to frivolous judicial challenges that hinder the President's power to respond to pressing issues." *Murphy Co.*, 65 F.4th at 1,131.

The Ninth Circuit's decision in *E.V. v. Robinson*, 906 F.3d 1082 (9th Cir. 2018), supports the view that presidential action cannot be challenged under an *ultra vires* theory. In *E.V.*, the court ruled that judicial review under the exceptions in *Larson* survived the 1976 amendments to the APA. *See id.* at 1,093-94. The court reasoned that the 1976 amendments were intended to eliminate the defense of sovereign immunity in suits against the federal government, not expand it. *Id.* at 1,093. But that rationale applies only so far as Congress intended to limit the sovereign immunity defense in the APA. But the Supreme Court has expressly ruled that Congress *did not*, through its silence, waive sovereign immunity as a defense to claims against the President. *See Franklin*, 505 U.S. at 800-01.

*Northern Alaska Environmental Center v. Trump, et al.*                    No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS                    15

Case 3:25-cv-00038-SLG    Document 49    Filed 07/29/25    Page 20 of 25

Therefore, *Robinson* cannot be extended to claims against the President.

Further, the exception for review of constitutional claims against the President, recognized in *Franklin*, 505 U.S. at 801, does not apply. In *Dalton*, the Supreme Court explained that "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims subject to judicial review under the exception recognized in *Franklin*." 511 U.S. at 473-74. So too here. Plaintiffs' claim that President Trump exceeded his authority under Section 12(a) of OCSLA, *see* Compl. ¶¶ 86-88, is a statutory claim and is unreviewable. And Plaintiffs' purported constitutional claim is no more than a restatement of their claim that President Trump lacked the authority under Section 12(a) of OCSLA to reverse a withdrawal made by a prior President. *See id.* ¶¶ 81-83. Plaintiffs' attempt to repackage their claim as one relating to the separation of powers to bring it within *Murphy*'s ambit, *see* Pls.' Opp. at 30-31, but their claim is at bottom a statutory claim. *See Murphy*, 65 F.4th at 1,131 ("[T]he Court has stipulated that not every *ultra vires* claim will necessarily implicate constitutional concerns.").

## IV. Plaintiffs Have Identified No Statutory or Equitable Right of Action.

Separate from a waiver of sovereign immunity, Plaintiffs must have a right of action to bring their claims. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Plaintiffs again disavow any reliance on the APA or OCSLA for this basic prerequisite. *See* Pls.' Opp. at 33. Instead, they rely on an implied right of action for both their statutory and constitutional claims. *See id.* at 34. They have failed to show, however, that such an implied right of action exists.

*Northern Alaska Environmental Center v. Trump, et al.*     No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS     16

Case 3:25-cv-00038-SLG     Document 49     Filed 07/29/25     Page 21 of 25

Neither *Armstrong* nor *Harmon* shows that an implied right of action exists for Plaintiffs' claims. In *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), the Supreme Court rejected the contention that there was an implied right of action for a Supremacy Clause claim, and it rejected the notion that a claim involving the Medicaid Act could proceed in equity. *Id.* at 327-28. *Harmon v. Brucker*, 355 U.S. 579 (1958), was decided over 65 years ago (before the APA amendments in 1976) and does not address the right of action issue. *See id.* at 581-82. Nor does *Larson* itself provide a right of action. *See* Defs.' Mem. at 27-28. And none of these cases involve the President.

Plaintiffs also rely on a pair of cases in which the Supreme Court reviewed certain constitutional claims. *See* Pls.' Opp. at 32. But those cases are distinguishable. In *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), the Court ruled that an accounting firm that was investigated by an oversight board under Sarbanes-Oxley was entitled to challenge the constitutionality of the creation of the board. *Id.* at 489-91. Similarly, in *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 642-43 (2002), a telecommunications company had a right to challenge a state commission's order purporting to regulate it on the basis that it was preempted by federal law. These cases are different because, unlike here, each case involved a regulated entity's challenge to the legality of an agency action directed against the regulated entity. And, unlike here, these cases did not involve claims against the President.

Plaintiffs argue that *Sandoval* is distinguishable because it was an instance in which Congress created a new substantive right by statute. *See* Pls.' Opp. at 32. Plaintiffs agree

*Northern Alaska Environmental Center v. Trump, et al.*                No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS                                        17

Case 3:25-cv-00038-SLG     Document 49     Filed 07/29/25     Page 22 of 25

that, if Congress wishes to make such rights privately enforceable, it must expressly say so in the statute. *Id.* at 32-33 (citing *Sandoval*, 532 U.S. at 285-93). But that is the very problem that Plaintiffs face—they wish to enforce a provision of OCSLA, but they lack the right of action to enforce it. Congress created a private right of action for certain violations of OCSLA, but not for actions challenging withdrawal decisions by the President. *See* Defs.' Mem. at 27.

Plaintiffs attempt to sidestep this problem by arguing that they are not actually attempting to enforce OCSLA, but they instead "seek an equitable remedy for harm caused by wholly unauthorized and unconstitutional executive overreach." Pls.' Opp. at 33. Even if such a distinction exists (which would allow Plaintiffs to circumvent the strictures of the APA and OCSLA), Plaintiffs have failed to show where the right of action for seeking such an equitable remedy comes from. While this Court generally rejected the defendants' arguments in *League of Conservation Voters*, 303 F. Supp. 3d at 995, it did not squarely address the right of action that allowed the plaintiffs to bring their claims, so that case provides no support for Plaintiffs here.[3] *See id.* Plaintiffs have failed to identify a right of action, so their claims must be dismissed.

---

[3] Plaintiffs also rely on *Amoco Production Company v. Village of Gambell*, 480 U.S. 531 (1987), but the cited passage addresses the preliminary injunction standard, not the private right of action issue. *See id.* at 545.

*Northern Alaska Environmental Center v. Trump, et al.*          No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS          18

Case 3:25-cv-00038-SLG     Document 49     Filed 07/29/25     Page 23 of 25

## V.   Plaintiffs Fail to Identify Any Final Agency Action by the Secretary of the Interior or the Secretary of Commerce.

Plaintiffs' claims against the Secretary of the Interior and Secretary of Commerce fail because Plaintiffs have not identified any final agency actions that could be challenged under the APA.  *See* Defs.' Mem. at 30-32.  The final agency action requirement is a basic requirement for suits against agency officials, and as previously demonstrated, the secretaries have taken no such actions.  Plaintiffs implicitly concede that point.

Instead, Plaintiffs argue that Defendants' "arguments are irrelevant because Plaintiffs are not challenging any final agency action under the APA."  Pls.' Opp. at 34-35.  They also assert that they can bring their challenge as an *ultra vires* challenge and seek injunctive relief against the secretaries, who are subordinates of the President.  *Id.* at 35.  The problem is that Plaintiffs *must* bring their claims against the agency heads under the APA.  They are expressly precluded from bringing *ultra vires* claims against agency officials because such claims can be brought under the APA.  *See Robinson*, 906 F.3d at 1094 ("[T]he *Larson* framework does not apply where the waiver of sovereign immunity under section 702 does.…").  Each of the secretaries is an "officer or employee" of an agency, 5 U.S.C. § 702, and therefore the waiver of sovereign immunity in the APA applies.  *Robinson*, 906 F.3d at 1,094.  Because Plaintiffs have identified no final agency actions taken by the secretaries, the claims against those officials must be dismissed.

Further, Plaintiffs' inability to identify any final agency action taken by the secretaries or any other agency official implementing President Trump's revocation of the withdrawals demonstrates that their claims are not ripe.  If the Department of the Interior takes

*Northern Alaska Environmental Center v. Trump, et al.*          No. 3:25-cv-00038-SLG
DEFENDANTS' REPLY. IN SUPP. OF MOTION TO DISMISS                                    19

Case 3:25-cv-00038-SLG     Document 49     Filed 07/29/25     Page 24 of 25

actual steps towards offering the previously withdrawn areas for leasing, Plaintiffs may have ripe claims at that time. But until then, the Court should not entertain such claims.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendants' memorandum in support of their motion to dismiss, Plaintiffs' Complaint should be dismissed for lack of jurisdiction.

Respectfully submitted this 29th day of July 2025.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice

*/s/ Luther L. Hajek*
LUTHER L. HAJEK (CO Bar # 44303)
Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
999 18th Street, North Terrace, Suite 600
Denver, CO 80202
Tel: (303) 844-1376 / Fax: (303) 844-1350
luke.hajek@usdoj.gov

*Counsel for Defendants*