Erik Grafe (AK Bar No. 0804010)
Hannah Payne Foster (AK Bar No. 2105045)
Earthjustice
310 K Street, Suite 508
Anchorage, AK 99501
T: 907.277.2500
egrafe@earthjustice.org
hfoster@earthjustice.org
[*Additional counsel listed on signature page*]

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN ALASKA ENVIRONMENTAL CENTER, ALASKA WILDERNESS LEAGUE, OCEANA, INC., SIERRA CLUB, SURFRIDER FOUNDATION, HEALTHY GULF, CENTER FOR BIOLOGICAL DIVERSITY, TURTLE ISLAND RESTORATION NETWORK, NATURAL RESOURCES DEFENSE COUNCIL, INC., GREENPEACE, INC., and CONSERVATION LAW FOUNDATION, | Case No. 3:25-cv-00038-SLG **SECOND AMENDED AND SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| *Plaintiffs*, | |
| v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States; DOUG BURGUM, in his official capacity as Secretary of the Interior; HOWARD W. LUTNICK, in his official capacity as Secretary of Commerce, | |
| *Defendants*, | |

and

AMERICAN PETROLEUM
INSTITUTE and STATE OF
ALASKA,

        *Intervenor-Defendants*.

# INTRODUCTION

1.     This action arises from President Donald Trump's unlawful attempt to undo permanent protections for certain areas of the U.S. Outer Continental Shelf in the Arctic Ocean, Pacific Ocean, Atlantic Ocean, and Gulf of Mexico,[1] put in place by Presidents Barack Obama and Joe Biden during their terms in office. President Obama, citing the dangers to communities and wildlife of offshore oil and gas exploration and development, the sensitivity of marine resources, the need to address climate change, the adequacy of energy sources near existing infrastructure elsewhere, and various barriers to development of the Arctic and Atlantic areas at issue, withdrew the vast majority of the Arctic Ocean and dozens of underwater canyons in the Atlantic Ocean from future oil and gas leasing pursuant to his authority under Section 12(a) of the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1341(a). Similarly, citing the principle of responsible public stewardship and the need to protect irreplaceable marine and coastal ecosystems, coastal communities, and subsistence uses from the harms of oil and gas development and the devastating and irreversible consequences of climate change, President Biden withdrew additional areas of the Arctic Ocean, Pacific

---

[1] On January 20, 2025, President Trump issued Executive Order 14172 to start a process to rename this area as the "Gulf of America."  90 Fed. Reg. 8629 (Jan. 31, 2025). This Complaint refers to this area as the "Gulf of Mexico" in accordance with the name in effect at the time all the relevant actions were taken and reflected on all relevant documents in this case.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 3 of 54

Ocean, Atlantic Ocean, and Gulf of Mexico from future oil and gas leasing under this authority.

2. Section 12(a) authorizes presidents to withdraw unleased public lands on the U.S. Outer Continental Shelf ("OCS") from disposition, including through leasing. Neither OCSLA nor any other provision of law authorizes Presidents to undo such withdrawals.

3. Nonetheless, on April 28, 2017, President Trump issued Executive Order 13795, entitled "Implementing an America-First Offshore Energy Strategy," which purported to reverse the Arctic and Atlantic Ocean withdrawals made by President Obama. Several Plaintiffs in this action filed suit, and this Court ultimately found that Section 12(a) of OCSLA did not authorize President Trump to revoke a prior withdrawal and thereby vacated Section 5 of Executive Order 13795. *League of Conservation Voters v. Trump*, 363 F. Supp. 3d 1013, 1020–31 (D. Alaska 2019), *vacated and remanded sub nom*. *League of Conservation Voters v. Biden*, 843 F. App'x 937 (9th Cir. 2021).

4. In January 2021, President Biden took office and issued Executive Order 13990, which reaffirmed the Obama withdrawals in the Arctic and Atlantic Oceans by revoking Executive Order 13795 and expressly reinstating an Arctic Ocean withdrawal. As a result, the *League of Conservation Voters* case was dismissed as moot. In 2023, President Biden utilized his authority under Section

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 4 of 54

12(a) to add protections for the Beaufort Sea in Alaska. Finally, on January 6, 2025, President Biden issued two memoranda withdrawing areas in the Pacific, Atlantic, Eastern and Central Gulf of Mexico, and Northern Bering Sea in Alaska pursuant to Section 12(a), providing protections that had significant local and political support.

5. Notwithstanding the prior ruling of this Court, on January 20, 2025, President Trump issued Executive Order 14148 entitled "Initial Rescissions of Harmful Executive Orders and Actions" that purported, by various means, to reverse the withdrawals made by Presidents Biden and Obama. The Department of the Interior ("Interior") has already taken steps to implement this Executive Order and to promote oil and gas development in these affected areas of the OCS. However, President Trump's order exceeds his constitutional authority and his statutory authority under OCSLA and is therefore *ultra vires* and unlawful. Plaintiffs Northern Alaska Environmental Center, Alaska Wilderness League, Oceana, Inc., Sierra Club, Surfrider Foundation, Healthy Gulf, Center for Biological Diversity, Turtle Island Restoration Network, Natural Resources Defense Council, Inc., Greenpeace, Inc., and Conservation Law Foundation ("Plaintiffs") seek declaratory and injunctive relief to prevent injury to the interests of their members that are threatened by the President's action.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG Document 53 Filed 10/24/25 Page 5 of 54

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action pursuant to 28 U.S.C.

§§ 1331 and 1361.

7.      The Court may issue declaratory and injunctive relief pursuant to 28

U.S.C. §§ 2201–2202.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) as

this civil action is brought against officers of the United States acting in their

official capacities and under color of legal authority, some Plaintiffs reside in this

judicial district, and a substantial part of property that is the subject of the action is

situated in this judicial district.

## PARTIES

9.      Plaintiff NORTHERN ALASKA ENVIRONMENTAL CENTER is

an Alaska nonprofit environmental advocacy and educational organization with

approximately 6,854 active constituents (including members and other supporters).

It has empowered citizens to take an active role in protecting natural habitats and

wild places in Arctic and interior Alaska since 1971. It advocates for Arctic

wilderness, wildlife, and traditional ways of life; transportation and infrastructure

alternatives that minimize impacts on wild lands; and clean water and wild rivers

to protect health, fish, and recreational opportunities. It has been actively involved

in efforts to protect the key values of public lands in the Arctic, including in the

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG

Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 6 of 54

Arctic Ocean, from the threats of oil and gas exploration and development.

Northern Alaska Environmental Center brings this action on behalf of its members.

10.     Plaintiff ALASKA WILDERNESS LEAGUE is a non-profit organization with approximately 130,000 members and supporters nationwide. Alaska Wilderness League was founded in 1993 to advocate for protection of Alaska's public lands and waters that are threatened with environmental degradation. Since its inception, it has taken, and continues to take, an active role on issues related to oil and gas exploration and development in Alaska, consistently advocating for protecting the Arctic, its wildlife, and communities from the risks and harms associated with offshore drilling. Its Alaska office employs two full-time employees, who drive the organization's policy direction and in-state engagement. Through advocacy and education, Alaska Wilderness League bridges the gap between Washington D.C. decisions and those most impacted by development decisions in Alaska. The organization meaningfully collaborates with partners – especially those from Alaska Native communities – in shared efforts to advance wild land protections and climate solutions. Alaska Wilderness League brings this action on behalf of its members.

11.     Plaintiff OCEANA, INC. is a nonprofit organization dedicated to protecting and restoring the world's oceans through policy, advocacy, science, law, and public education. Oceana is headquartered in Washington, D.C. and has a

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 7 of 54

regional office in Juneau, Alaska. Oceana has over one million members and supporters in the United States. Oceana's Climate and Energy Campaign uses science and advocacy to drive policies aimed at reducing threats to communities by preventing new offshore oil drilling and promoting responsible offshore wind energy. Oceana's staff and members have been engaged in opposing offshore oil drilling and have put significant resources and effort into advocating for permanent protections from offshore oil and gas drilling. Oceana brings this action as representative of its members.

12.     Plaintiff SIERRA CLUB is a not-for-profit organization dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The Sierra Club is one of the oldest and largest conservation groups in the country. The Sierra Club is incorporated in California and currently has more than 610,000 members nationwide. The Sierra Club's interests encompass a wide range of environmental issues, including wildlife conservation, public lands and waters, endangered species, clean water, and clean air. The Sierra Club has long been active in issues relating to the impacts of oil and gas exploration and development in America's OCS and has pushed for its protection from the risks of

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 8 of 54

offshore drilling. Sierra Club members use the public lands and waters throughout the nation, including those that would be affected by oil and gas activities, for quiet recreation, aesthetic pursuits, and spiritual renewal. Sierra Club members further observe and enjoy wildlife that may be harmed by oil and gas activities. The Sierra Club brings this action on behalf of its members.

13.     Plaintiff SURFRIDER FOUNDATION ("Surfrider") is a nonprofit organization dedicated to the protection and enjoyment of the world's oceans, waves, and beaches. Surfrider is headquartered in San Clemente, California and has more than 350,000 supporters and members, 79 local chapters, and 159 school clubs in the United States. Surfrider's members recreate in and enjoy the coastal areas impacted by the challenged action, and derive recreational, aesthetic, and economic benefits from a clean and healthy ocean ecosystem and the diverse marine life that resides there. Surfrider brings this action on behalf of its members.

14.     Plaintiff HEALTHY GULF is a network of community, conservation, environmental, and fishing groups and individuals committed to empowering people to protect and restore the natural resources of the Gulf of Mexico. Healthy Gulf's purpose is to collaborate with and serve communities who love the Gulf of Mexico by providing research, communications, and coalition-building tools needed to reverse the long pattern of over-exploitation of the Gulf's natural resources. Healthy Gulf has been actively involved in efforts to strengthen

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case No. 3:25-cv-00038-SLG
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 9 of 54

oversight of the offshore oil and gas industry and end new oil and gas leasing in this region. Healthy Gulf is headquartered in New Orleans, Louisiana, with offices in Pensacola, Florida and Madison, Mississippi. Healthy Gulf's members live in the five Gulf states of Texas, Louisiana, Mississippi, Alabama, and Florida, and nationwide. Healthy Gulf brings this action on behalf of its members.

15.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a nonprofit corporation that maintains offices across the United States. The Center has more than 79,000 members, including more than 240 in Alaska. The Center advocates for the protection of threatened and endangered species and their habitats through science, policy, and environmental law. The Center's mission also includes protecting air quality, water quality, and public health. The Center's Oceans Program focuses specifically on conserving marine ecosystems and seeks to ensure that imperiled species such as marine mammals, corals, and sea turtles are properly protected from destructive practices in our oceans. The Oceans Program also works to protect coastal communities from the air pollution, water pollution, and other impacts that result from such practices. The Center has long advocated for keeping federal OCS waters off-limits to federal oil and gas development. The Center has thousands of members who live and recreate in coastal areas impacted by the challenged action and who appreciate and benefit from wildlife threatened by noise pollution, vessel traffic, oil spills, and/or climate

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 10 of 54

pollution caused by oil and gas activity. The Center brings this action on behalf of its members.

16.     Plaintiff TURTLE ISLAND RESTORATION NETWORK ("TIRN") is a nonprofit organization based in Forest Knolls, California. TIRN has been a leading advocate for the world's oceans and marine wildlife for more than 35 years. TIRN and its members work to protect and restore populations of endangered sea turtles and other vulnerable marine creatures such as whales and dolphins, as well as marine biodiversity and ecosystems. TIRN has over 100,868 members and supporters, including members who live and recreate in areas of the Pacific, Gulf, and Atlantic coasts. TIRN brings this action on behalf of its members.

17.     Plaintiff NATURAL RESOURCES DEFENSE COUNCIL, INC. ("NRDC") is a nonprofit environmental advocacy organization with hundreds of thousands of members nationwide. It has a longstanding and active involvement in the protection of the Arctic, Atlantic, and Pacific Oceans from oil and gas exploration and development, including working for their permanent protection from expanded oil and gas leasing; and has also worked to protect the Gulf from expanded oil and gas development. With its nationwide membership and a staff of lawyers, scientists, communications specialists, and other environmental professionals, NRDC gathers, analyzes, and uses information about federal

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 11 of 54

government proposals to shape its advocacy and inform its members on a diverse range of land and wildlife management and resource development issues, including those associated with climate change. NRDC brings this action on behalf of its members.

18.     Plaintiff GREENPEACE, INC. ("Greenpeace") is a nonprofit corporation organized under the laws of the State of California. Its mission is to promote the protection and preservation of the environment. Greenpeace is an independent campaigning organization that uses peaceful, creative confrontation to expose global environmental problems and to force solutions that are essential for a green and peaceful future. Greenpeace has over 585,000 active members in the United States, including 1,226 in Alaska. For more than two decades, Greenpeace has been a lead advocacy organization working to raise awareness of global warming and the protection of wildlife, and to pressure for serious cuts in greenhouse gas emissions through local, national and global action. In the United States, Greenpeace has run campaigns aimed at stopping global warming by phasing out fossil fuel use and promoting renewable energy systems. As a part of these efforts, Greenpeace has actively worked to protect the OCS, including the Pacific, Atlantic, and Arctic Oceans, from the harmful effects of offshore oil and gas activities. Greenpeace has thousands of members who live and recreate in coastal areas impacted by the challenged action and who appreciate and benefit

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 12 of 54

from wildlife threatened by noise pollution, vessel traffic, oil spills, and/or climate

pollution caused by oil and gas activity. Greenpeace brings this action as

representative of its members.

19.     Plaintiff CONSERVATION LAW FOUNDATION ("CLF") is a

membership-supported 501(c)(3) nonprofit corporation organized and existing

under the laws of the Commonwealth of Massachusetts with principal offices at 62

Summer Street, Boston, MA. CLF also has offices in Maine, New Hampshire,

Vermont, Rhode Island, and Connecticut, and more than 5,900 members. CLF

works in its own right and on behalf of its members toward comprehensive long-

term solutions to environmental challenges. CLF members rely upon CLF to

advocate for and safeguard the health, quality of life, and economic prosperity of

our communities for generations to come. Due to the potential impacts of oil and

gas development on the marine ecosystem, CLF has actively opposed and

successfully litigated potential oil and gas leases on the Northeast outer continental

shelf since the 1970s.

20.     Members of the Plaintiff organizations visit or otherwise use and

enjoy the Chukchi and Beaufort Seas, Atlantic Ocean including near deepwater

canyons, Pacific Ocean, Eastern and Central Gulf of Mexico, and coastal regions

adjacent to those areas, for cultural and subsistence purposes, recreation, wildlife

viewing, education, research, photography, aesthetic and spiritual enjoyment, or

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 13 of 54

their professions or livelihoods, and they enjoy wildlife that utilizes these areas. The members' use and enjoyment of these areas and wildlife are affected by the condition of the areas and health of individual wildlife and populations and their habitat in the wild. Any activities, such as oil and gas exploration or development, including seismic surveying, that destroy, degrade, or diminish the wild and natural state of these areas, or that kill, injure, harm, harass, or displace wildlife, also interfere with Plaintiffs' members' use and enjoyment of the areas and associated wildlife. As such, these activities directly and irreparably injure the interests of Plaintiffs' members. President Trump's revocation of the withdrawals made by President Biden and President Obama removes protections that would permanently prevent these activities, and hence the harms, to Plaintiffs' members.

21.     Plaintiffs' members regularly use, enjoy, and benefit from the marine and coastal environments of the Chukchi and Beaufort Seas, Atlantic Ocean, Pacific Ocean, and Eastern and Central Gulf of Mexico and plan to continue doing so in the future. Plaintiffs' members regularly enjoy and benefit from the presence of healthy marine and avian life within those environments for recreational, aesthetic, commercial, scientific, and environmental purposes, including whale watching, bird watching, scientific study, boat touring, underwater diving, fishing, photography, sculpture, and beach bathing.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 253     Filed 10/24/25     Page 14 of 54

22.     Plaintiffs and their members are harmed by President Trump's reversal of the withdrawals of these areas of the federally-owned OCS from oil and gas leasing and development and the resulting environmental impacts. As a result of Executive Orders 14148 and 13795, the Department of the Interior now has the power to open up leasing in any of the regions affected, which will likely result in the resumption of oil and gas exploration activities in these areas. These activities will degrade affected OCS areas and adjacent coastal environments and harm wildlife, their habitats, and the interests of Plaintiffs and their members. Among those activities is seismic surveying, which often precedes oil and gas lease sales by several years and which poses imminent risks to the affected regions and wildlife. Other activities that will result in injuries to Plaintiffs and their members include increased vessel traffic, noise pollution, oil spills, and air and water pollution associated with oil and gas development.

23.     The President's violation of law threatens imminent, irreparable harm to the interests of Plaintiffs and their members. These injuries will continue unless this Court grants the requested relief. Plaintiffs have no other adequate remedy at law.

24.     Defendant DONALD J. TRUMP is the President of the United States and took the action challenged in this Complaint. Plaintiffs sue President Trump in his official capacity.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 15 of 54

25.     Defendant DOUG BURGUM, United States Secretary of the Interior, is the highest ranking official within the Department of the Interior and, in that capacity, has ultimate responsibility for the administration and implementation of OCSLA, including oil and gas leasing and development in the OCS, as well as administering and implementing certain provisions of the Marine Mammal Protection Act ("MMPA") and the Endangered Species Act ("ESA"), including issuance of permits required for seismic surveying, offshore drilling, and production of oil and gas in areas withdrawn by President Biden and President Obama, and for compliance with all other federal laws applicable to Interior. He is sued in his official capacity.

26.     Defendant HOWARD W. LUTNICK, United States Secretary of Commerce, is the highest ranking official within the Department of Commerce and, in that capacity, has ultimate responsibility for the administration and implementation of the MMPA and the ESA, including issuance of permits required for seismic surveying, offshore drilling, and the production of oil and gas in areas withdrawn by President Biden and President Obama, and for compliance with all other federal laws applicable to the Department of Commerce. He is sued in his official capacity.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 16 of 54

## STATUTORY BACKGROUND

27.     OCSLA governs the leasing, exploration, and development of oil and gas deposits in the Outer Continental Shelf. 43 U.S.C. § 1331 *et seq*. The OCS extends from the outer boundary of state waters, typically three nautical miles from shore, to the outer boundary of the United States' Exclusive Economic Zone, 200 nautical miles from shore. *Id.* §§ 1301(a)(2), 1331(a); 48 Fed. Reg. 10605 (Mar. 14, 1983). The federal OCS consists in total of approximately 2.5 billion acres.

28.     OCSLA charges the Secretary of the Interior with managing oil and gas activities on the Outer Continental Shelf. 43 U.S.C. §§ 1334(a), 1344(a). Management of the Outer Continental Shelf "shall be conducted in a manner which considers economic, social, and environmental values of the renewable and nonrenewable resources contained in the [OCS]," as well as "the potential impact of oil and gas exploration on other resource values of the outer Continental Shelf and the marine, coastal, and human environments." *Id.* §§ 1344(a)(1), 1332(3), 1334(a). OCSLA further directs that offshore development shall be "subject to environmental safeguards," consistent with "national needs," and operations should be conducted so as to "prevent or minimize … damage to the environment." *Id.* § 1332(3), (6).

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 17 of 54

29.     Under this framework, OCSLA Section 12(a) provides that "[t]he President of the United States may, from time to time, withdraw from disposition any of the unleased lands of the outer Continental Shelf." 43 U.S.C. § 1341(a).

30.     For areas not so withdrawn and otherwise open to disposition of federal mineral rights, OCSLA establishes distinct stages for oil and gas development activities:  (1) the development of a five-year leasing program, (2) issuance of oil and gas leases, (3) approval of lessees' exploration plans, and (4) approval of lessees' development and production plans. 43 U.S.C. § 1331 *et seq*.; 30 C.F.R. Parts 550, 551.

31.     Certain exploration activities, such as seismic exploration, can occur at any time before or during these stages in accordance with regulations established pursuant to, inter alia, the Secretary of the Interior's rulemaking authority. 43 U.S.C. §§ 1334(a), 1340(a), (b), (g); *see also* 30 C.F.R. Parts 550, 551.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.     OUTER CONTINENTAL SHELF AREAS THREATENED BY PRESIDENT TRUMP'S EXECUTIVE ORDERS

32.     President Trump's Executive Orders 14148 and 13795 purport to reopen several areas of the Outer Continental Shelf in the Chukchi and Beaufort Seas, Atlantic Ocean, Pacific Ocean, and Eastern and Central Gulf of Mexico to oil and gas leasing. These areas had been withdrawn from such activities by Presidents Obama and Biden.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 18 of 54

33.     In Alaska, the Chukchi and Beaufort Seas constitute America's Arctic Ocean. With their federal waters still essentially undeveloped, they border sensitive federal lands and provide habitat to a rich array of unique wildlife species including polar bears, walruses, whales, seals, and numerous other mammals, birds, and fish, some of them classified as threatened or endangered. Some of these animals also support thriving indigenous Alaska Native cultural and subsistence activities. Several Arctic mammals, including polar bears and bearded seals, have been listed under the ESA because of global warming threats to the sea ice on which they rely for crucial life functions such as foraging and raising young; they and numerous other imperiled species are also protected under the MMPA. Many Arctic species of birds, which migrate to and from the region's waters annually in the millions, are also threatened by global warming. The region is remote and subject to extreme weather. In winter, the seas are covered in ice and shrouded in darkness. Even in summer, ice can encroach with little notice, and the seas are prone to storms and fog. There is little infrastructure in the region to support industrial activity. The coastal region contains only eight small communities, unconnected to one another, or the rest of Alaska, by roads. It mostly lacks jet runways, has no deepwater ports, and is hundreds of miles from the nearest Coast Guard station.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 19 of 54

34.	In the Pacific Ocean, federal OCS waters are home to globally significant marine environments that provide enormous ecological, scientific, and economic benefits. California alone has five National Marine Sanctuaries – Monterey Bay National Marine Sanctuary, Greater Farallones National Marine Sanctuary, Cordell Bank National Marine Sanctuary, Channel Islands National Marine Sanctuary, and the recently-designated Chumash Heritage National Marine Sanctuary—that are rich in natural and scenic resources and are the basis for some of the state's largest economic drivers. These areas contain an extremely rich and diverse array of marine species, making them ideal places for viewing whales, sea otters, seals, sea lions, sea turtles, seabirds and other wildlife. Species such as the grey whale span the entire Pacific coast, making an annual migration of more than 10,000 miles between their wintering and calving areas in Baja California, Mexico and their summer feeding grounds in the northern Bering and Chukchi seas in Alaska. California's direct ocean-based economy is nationally significant for tourism, marine transport, recreation, and commercial and recreational fisheries.

35.	Federal OCS waters in the Atlantic Ocean are also home to important and sensitive marine species and constitute a marine environment very largely still unmarked by industrial development. They contain highly diverse habitats and harbor important fish and shellfish populations. The waters of the Atlantic continental shelf furnish nurseries, feeding grounds, and transit routes for marine

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 53    Filed 10/24/25    Page 20 of 54

animals. Among their unique and outstanding geological features are dozens of undersea canyons, some of them 100 miles long and deeper than the Grand Canyon, rich in marine life. Incised into the continental shelf, these canyons support cold-water corals hundreds of years old, multitudes of whale species, swordfish, bluefin tuna, sea turtles, seabirds, crustaceans, and methane-dependent organisms known only from such canyons. The surrounding seafloor and continental slope break comprise a vast biodiversity hotspot, a mixing zone of currents and sharp temperature gradients, and underlie an internationally known whale migration corridor that connects feeding grounds in the Gulf of Maine to calving areas offshore Florida. Businesses along the U.S. Atlantic coast— including fishing, tourism, and recreation industries—are heavily dependent on the health of this ocean ecosystem and are major contributors to the region's economy.

36. The Gulf of Mexico is one of the most productive and biodiverse ecosystems in the United States, providing a home to thousands of species ranging from simple invertebrates to highly evolved marine mammals including dolphins and whales. The Gulf includes habitat for five of the world's seven species of sea turtles and is the exclusive home of the critically endangered Rice's whale, a species that scientists estimate may have only 50 individuals remaining. Millions of people who live in Gulf Coast states depend on this productive marine environment to support coastal fisheries, tourism, and recreational opportunities.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 53    Filed 10/24/25    Page 21 of 54

The Gulf supports robust commercial fisheries, which generate $6.9 billion in annual income and provide more than 20 percent of total commercial and recreational fishing harvests each year. Fishing and shrimping are also part of the traditional livelihoods and culture of many Gulf communities.

## II. THREATS FROM OFFSHORE OIL AND GAS EXPLORATION AND DEVELOPMENT

37.     Oil and gas development in the Outer Continental Shelf has significant, wide-ranging adverse impacts on these ecosystems and the nearby coastal environments. For example, the deafening sounds generated by pre-lease and on-lease seismic surveys and drilling activities disturb and injure marine animals. The heightened risk of oil spills from exploratory and development drilling puts marine life and human activities dependent on these ecosystems at risk. Vessels, fixed-winged aircraft, and helicopters used in oil and gas activities also adversely affect ocean species, sometimes fatally. Air and water pollution from oil and gas operations and associated infrastructure harm public health and have significant effects on tribes and environmental justice communities.

38.     Plaintiffs are all too familiar with the adverse impacts of OCS oil and gas development. The Gulf of Mexico experienced its worst ecological disaster in April 2010 when the Deepwater Horizon rig exploded and sank, killing eleven people and causing major environmental damage. *See generally In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico, on Apr. 20, 2010*, 21 F.Supp.3d

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 22 of 54

657, 667 (E.D. La. 2014). The Deepwater Horizon explosion caused oil to gush from the well on the seabed, nearly 5,000 feet below the ocean's surface for months until the well finally was capped in mid-July 2010. The result was the largest oil spill in United States's history and a cleanup and containment effort that at its height enlisted 50,000 workers on land and sea. Over the 87 days during which the well remained uncapped, over 100 million gallons of oil and unquantified amounts of natural gas flowed freely into the Gulf. In an effort to break apart large concentrations of oil, responders released 1 million gallons of toxic dispersants into Gulf waters. The spill contaminated over 112,000 square kilometers of ocean waters and over 2,100 kilometers of shoreline in the Gulf.

39.     Scientists estimate the spill caused death or serious harm to billions, if not trillions, of animals, including over 100,000 individuals of species listed as threatened or endangered. The Rice's whale, for example, experienced a 22 percent population decline as a result of the disaster, and it has not and may not ever recover. The spill marred coastal and bottom habitats, causing severe damage to the ecosystems that support the Gulf's biodiversity. The harm from the spill to marine and coastal species and the environment persists to this day. In the Atlantic, a spill equivalent to the Deepwater Horizon disaster could coat beaches stretching from Savannah to Boston.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 23 of 54

40.     Interior has previously found that if just one major lease in the

Arctic's Chukchi Sea were developed, there would be a 75 percent chance of an oil

spill of greater than 1,000 barrels in this sensitive region. No response technologies

are proven to reliably recover or contain even half of the oil from a large offshore

spill in any region. The three primary oil spill response methods—mechanical

containment and recovery, in situ burning, and dispersants—would likely be

particularly ineffective and damaging in the Arctic.

41.     Offshore spills have caused similar harms along the Pacific coast. In

January 1969, the nation's first large offshore oil spill occurred in the Santa

Barbara Channel after a blow-out on Platform A in the Dos Cuadras Offshore Oil

Field. Within a ten-day period, an estimated 80,000 to 100,000 barrels of crude oil

spilled into the Santa Barbara Channel and onto the beaches of Southern California

between Goleta and Ventura, as well as the shores of the four northern Channel

Islands. The spill had a significant impact on marine life, killing thousands of sea

birds and marine mammals such as dolphins, elephant seals, and sea lions. All

commercial fishing was suspended and tourism suffered. Property damage along

the shoreline was extensive. The spill was also a factor in the passage of both the

National Environmental Policy Act and the Coastal Zone Management Act. The

spill still ranks as the third largest in U.S. history after the 2010 Deepwater

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 24 of 54

Horizon and 1989 Exxon Valdez oil spills, and remains the largest oil spill to have occurred in the waters off California.

42.    More recently, in 2015, as much as 451,000 gallons of crude oil spilled from Plains All American Pipeline near Refugio State Beach in Santa Barbara County, with at least 21,000 gallons flowing into the Pacific Ocean. Thousands of birds and marine mammals were killed and 138 square miles of fisheries were closed for six weeks. The pipeline was used to transport oil and gas developed from California's OCS.

43.    In October 2021, the San Pedro Bay Pipeline (Pipeline P00547) broke and spilled crude oil into the waters 4.5 miles offshore of Huntington Beach, California. Failure of the pipeline may have been caused by the anchor of a ship that hooked the pipeline, causing a partial tear. An estimated 24,696 gallons of oil were spilled into San Pedro Bay. The oil spill affected ocean waters, rocky intertidal habitats, subtidal habitats, sandy beaches, and sensitive marsh habitats as well as fish, birds, invertebrates, and marine mammals. The spill also closed multiple beaches and harbors, and impacted outdoor recreation and fishing.

44.    One of the initial impacts that would result from reopening OCS areas to oil and gas development would be from the use of seismic airgun surveys. Seismic surveying is often conducted two to four years prior to lease sales to identify areas with promising oil and gas prospects, although companies also have

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 53    Filed 10/24/25    Page 25 of 54

sought approval to conduct seismic surveys even when lease sales are more than

four years away and not included in an existing or proposed five-year program. As

technology advances, companies frequently conduct surveying in areas already

subjected to previous surveying.

45.      These surveys typically deploy arrays of airguns, which are towed

behind ships across broad swaths of the ocean. While seismic surveys are useful

for oil and gas prospecting, they have devastating impacts on marine life. Seismic

airgun arrays fire intense blasts of energy into the water about every 10 to 12

seconds for days, weeks, or months at a time depending on the length of the

survey. A large seismic array can produce effective levels of sound—above 250

decibels—greater than that of virtually any other man-made source, save

explosives. These noise blasts penetrate deep into the seafloor and rebound to the

surface for analysis.

46.      Noise from seismic operations harms and harasses marine mammals.

If animals are exposed to high enough levels of sound, such as those that exist

close to some seismic airguns, they can suffer shifts in hearing thresholds and

hearing loss that may result in mortality. Noise at lower levels also causes many

marine mammal species to alter their natural behavior in ways that interfere with

vital activities, including avoiding feeding areas, diverting their migratory paths,

separating mothers and young, and impeding communication among individuals.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG      Document 53      Filed 10/24/25      Page 26 of 54

The National Marine Fisheries Service ("NMFS"), an agency within the Department of Commerce, estimated that a single two-month-long seismic survey in 2012 in the Arctic Ocean would disturb over 60,000 ringed seals and 4,600 beluga whales. In July 2014, when Interior issued a Record of Decision that opened most federal waters in the Mid- and South Atlantic to seismic oil and gas exploration, it estimated that these activities could result in as many as 138,000 injuries and 13.4 million disturbances of marine mammals, including disruptions in vital behaviors such as feeding and mating, over the first nine years.

47.    Seismic surveys also harm commercially important fish and shellfish. The intense sound pressures produced by industry's airguns can injure or kill fish with swim bladders or other gas-filled chambers, and the particle motion of the powerful sound through the water can damage the hearing and sensory capabilities of both fish and invertebrates. At lower intensities, the same sounds can also produce a physical stress response. Over time, this stress response to seismic sound can degrade health and fitness and increase mortality. Seismic airgun disruption to fish behavior over large areas of ocean is associated with dramatic reductions in documented catch rates of commercially important fish. Depression of catch rates can persist well after a seismic survey has ended.

48.    When the Arctic Ocean was not withdrawn from leasing, the oil industry conducted large-scale seismic surveying there. In the Arctic, these surveys

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 27 of 54

covered tens of thousands of square miles, including in the Beaufort Sea. The Beaufort Sea area has high oil and gas resource potential and is adjacent to existing state oil and gas activity and infrastructure, including the Trans Alaska Pipeline System that transports Arctic oil to market. Before it was withdrawn from leasing, oil companies invested hundreds of millions of dollars in seismic surveying, leasing, exploration drilling, and development plans in the area. Hilcorp is currently producing oil from several leases in this OCS area through its Northstar development. The Bureau of Ocean Energy Management ("BOEM") approved another oil development, called Liberty, in the area, which was later vacated by the Ninth Circuit.

49.     Industry continues to be interested in the Beaufort Sea area. The State of Alaska's 2024 Beaufort Sea lease sale, held after the 2024 presidential election in Alaska state waters, was its most successful lease sale since at least 2018. The Beaufort sale drew 33 bids, including bids competing over the same tracts, and it issued 20 leases, at an estimated bonus bid value of over $9 million. Bids came from multiple companies, including a company new to Alaska that was formed initially to explore the Gulf of Mexico "to discover and produce new oil and gas fields." Several of the leases issued in this recent sale are near the federal OCS boundary. On August 20, 2025, NMFS issued an incidental harassment authorization to a company planning to conduct drilling and shallow hazard

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 28 of 54

seismic surveying in the coming year in state waters adjacent to federal OCS areas in the Beaufort Sea. The activities are estimated to disrupt critical behavioral patterns of 20 bowhead whales and over 2000 ice seals protected by the Endangered Species Act.

## III. OCS ACTIVITIES AND ATTEMPTS BY PRESIDENT TRUMP TO EXPAND DRILLING

50.     In January 2017, prior to President Trump's first term, Interior finalized a 2017–2022 five-year leasing program that scheduled 11 potential lease sales in two program areas: 10 sales in the combined Gulf of Mexico Program Area, and one sale in the Cook Inlet Program Area offshore Alaska.[2] No lease sales were scheduled for the Arctic, Pacific or Atlantic OCS areas.

51.     However, on July 3, 2017, the Trump administration published a Request for Information and Comments on the Preparation of a new 2019–2024 National Outer Continental Shelf Oil and Gas Leasing Program to replace the 2017–2022 program. 82 Fed. Reg. 30886. This process was designed to implement President Trump's "America-First Offshore Energy Strategy," as outlined in Executive Order (E.O.) 13795 of April 28, 2017, and Secretarial Order 3350 of

---

[2] Memorandum from Walter D. Cruickshank, Acting Director, BOEM, to Janice M. Schneider, Assistant Secretary, Land and Minerals Management, BOEM, Record of Decision and Approval of the 2017–2022 Outer Continental Shelf Oil and Gas Leasing Program (Jan. 17, 2017), https://www.boem.gov/sites/default/files/oil-and-gas-energy-program/Leasing/Five-Year-Program/2017-2022/2017-2022-Record-of-Decision.pdf.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 29 of 54

May 1, 2017, which called for enhancing opportunities for energy exploration, leasing, and development of the OCS. *Id.* In the information request, Interior sought information regarding leasing offshore tracts in all twenty-six OCS planning areas. *Id.*

52. In comments on the information request, industry groups led by the American Petroleum Institute stated that: "all OCS areas with the potential to generate jobs and new revenue by advancing America's energy renaissance should be considered for inclusion in the Draft Proposed Program. Anything less undermines the comprehensive process set forth in the OCS Lands Act and could have significant impacts on U.S. energy policy options well into the future. We fully support keeping existing exploration production areas in the Gulf of Mexico (GOM) and Alaska available for leasing in the 2019–2024 Leasing Program and also urge BOEM to make new areas in the Atlantic, Eastern Gulf of Mexico (EGOM), Beaufort and Chukchi Seas of Alaska, and the Pacific available for leasing as part of the program."

53. Following President Trump's April 28, 2017 Executive Order, one seismic industry trade group called for seismic surveying to proceed "without delay" in order to "allow for informed decisions as a new five-year lease plan is developed." In the Atlantic, at least six seismic operation companies applied to BOEM for permits to conduct "deep-penetration seismic surveys," deploying large

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 53    Filed 10/24/25    Page 30 of 54

airgun arrays to prospect for oil and gas deposits miles beneath the seafloor. In the Pacific, at least one company applied to BOEM for a geological and geophysical permit to conduct a 3-Dimensional (3D) seismic survey in federal waters offshore Huntington Beach, California. Concurrently, several seismic firms applied to NMFS for authorization under the MMPA to injure and harass marine mammals during their activities. The proposed surveys would have covered many of the same ocean areas, repeatedly exposing the same wildlife populations to disruptive high-intensity sound. Collectively, the applications submitted to NMFS proposed to run more than 126,000 linear kilometers of airgun surveys during the first year of exploration activity in the region. NMFS has predicted that, assuming the Arctic Ocean is open for leasing, there could be multiple seismic surveying operations every year in federal waters. An Italian oil major, Eni, conducted exploration drilling from a gravel island in state waters on its existing federal leases in the Beaufort Sea in 2017 and 2018, and a seismic operator, SAExploration, sought federal authorizations to conduct 3-D seismic exploration in the Beaufort Sea area.

54.     In January 2018, the Trump administration released its 2019–2024 draft proposed program for OCS leasing, proposing 47 total offshore lease sales, including 19 in the Alaska region and seven in the Pacific region. 83 Fed. Reg. 829, 830 (Jan. 8, 2018). This included six lease sales in the Beaufort and Chukchi Seas, two lease sales each for California's Northern, Central, and Southern

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 31 of 54

Planning Areas, one lease sale in the Washington and Oregon Planning Area, and multiple sales in the Atlantic Ocean and the Eastern Gulf of Mexico. *Id.* at 830–31.

55.     The Trump administration did not finalize this draft proposed program prior to the change in Presidential administrations in January 2021.

56.     The current five-year OCS leasing program, which runs from 2024–2029, was finalized by the Biden administration on December 14, 2023.[3] Although Interior had initially issued a proposed leasing program in July 2022 with up to ten lease sales in the Gulf of Mexico and one sale in Alaska, 87 Fed. Reg. 40859 (July 8, 2022), the final program narrowed the schedule of potential lease sales to three sales in the Western and Central Gulf of Mexico. *Id.*

57.     Although the current five-year program does not expire until 2029, press reports prior to President Trump's inauguration indicated that the President-elect planned to "quickly reopen five-year drilling plans off the U.S. coast to include more lease sales."[4] This is consistent with President Trump's campaign

---

[3] Memorandum from Elizabeth Klein, Director, BOEM, to Stephen H. Feldgus, Deputy Assistant Secretary, Land and Minerals Management, Re Record of Decision and Approval of the 2024–2029 National Outer Continental Shelf Oil and Gas Leasing Program (Dec. 14, 2023), https://www.boem.gov/sites/default/files/documents/oil-gas-energy/Decision-Memo-National-Program-SIGNED.pdf.

[4] Bruce Beaubouef, *Report: Trump prepares wide-ranging energy plan to boost gas exports, oil drilling*, Offshore Magazine (Dec. 9, 2024), https://www.offshore-mag.com/regional-reports/us-gulf-of-mexico/news/55248507/report-trump-prepares-wide-ranging-energy-plan-to-boost-gas-exports-oil-drilling; Jarrett Renshaw, *Exclusive: Trump prepares wide-ranging energy plan to boost gas exports, oil drilling, sources say, Reuters* (Nov. 27, 2024), https://www.reuters.com/business/energy/trump-prepares-wide-ranging-energy-plan-boost-gas-exports-oil-drilling-sources-2024-11-25/.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 32 of 54

promise to "Drill, baby, drill," and "[m]ake America the dominant energy producer in the world, by far!"[5]

58. On January 20, 2025, the first day of his second term in office, President Trump issued an executive order entitled, "Unleashing American Energy," which provides: "It is the policy of the United States … to encourage energy exploration and production on Federal lands and waters, including on the Outer Continental Shelf, in order to meet the needs of our citizens and solidify the United States as a global energy leader long into the future." 90 Fed. Reg. 8353 (Jan. 29, 2025). In his inaugural speech, President Trump again stated that "We will drill, baby, drill" and affirmed his plan to declare a national energy emergency.[6]

59. On January 24, 2025, President Trump issued a statement entitled, "The First 100 Hours: Historic Action to Kick Off America's Golden Age," which proclaimed: "President Trump said we would drill, baby, drill. The President signed executive orders to open up offshore drilling and allow more energy

---

[5] A Martínez, H.J. Mai, *Trump wants to 'Drill, baby, drill.' What does that mean for climate concerns?*, NPR Morning Edition (Nov. 15, 2024), https://www.npr.org/2024/11/13/nx-s1-5181963/trump-promises-more-drilling-in-the-u-s-to-boost-fossil-fuel-production; Trump Vance 2024, Agenda 4, https://www.donaldjtrump.com/platform.
[6] Robin Bravender, *Trump details sweeping energy agenda*, E&E News (Jan. 20, 2025), https://subscriber.politicopro.com/article/eenews/2025/01/20/trumps-sweeping-energy-agenda-inauguration-speech-00199307.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 53    Filed 10/24/25    Page 33 of 54

exploration in Alaska."[7] The statement also included a quote from American Petroleum Institute President and CEO Mike Sommers, providing that "Americans sent a clear message at the ballot box, and President Trump is answering the call on Day 1. U.S. energy dominance will drive our nation's economic and security agenda. This is a new day for American energy, and we applaud President Trump for moving swiftly to chart a new path where U.S. oil and natural gas are embraced, not restricted."

60.     On February 14, 2025, President Trump issued an executive order establishing a "National Energy Dominance Council." The council will "advise the President on how best to exercise his authority to produce more energy to make America energy dominant," and specifically calls for "approving the construction of natural gas pipelines to, or in, New England, California, Alaska, and other areas of the country underserved by American natural gas." The council will be chaired by Secretary Burgum, who stated that "We've got to unleash [energy] from the Gulf of America all the way up to Alaska."[8]

---

[7] The White House, *The First 100 Hours: Historic Action to Kick Off America's Golden Age* (Jan. 24, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/the-first-100-hours-historic-action-to-kick-off-americas-golden-age/.
[8] Rachel Frazen, *Trump formally establishes new energy council*, The Hill (Feb. 14, 2025), https://thehill.com/policy/energy-environment/5146202-trump-american-energy-council-burgum/.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 34 of 54

61.     On April 18, 2025, Interior announced in a press release that it was initiating a process to develop a new five-year leasing program. The press release noted that "[a] new planning area offshore Alaska-the High Arctic-is being established as the 27th OCS planning area," and reiterated President Trump's desire to "unlock[] the full potential of our offshore resources" and achieve "energy dominance" by expanding offshore energy exploration and production.

62.     On April 30, 2025, Interior published a notice in the Federal Register requesting information and comments on this new five-year leasing program. 90 Fed. Reg. 17972 (Apr. 30, 2025). In the notice, Interior reiterated President Trump's desire to "encourage energy exploration and production on federal lands and waters, including on the [OCS]," and noted that BOEM "may receive new [geological and geophysical] permit applications in the near future" in the Atlantic OCS region. *Id*. at 17973–74. Interior further stated that it would "analyze all 27 OCS planning areas, including areas that may be currently unavailable for leasing," as part of the new five-year program. *Id*. at 17974.

63.     On July 4, 2025, President Trump signed Public Law No. 119-21. Section 50102(a) of that act requires Interior to conduct a minimum of 30 region-wide lease sales in the Gulf between 2025 and 2040, with each lease sale at least 80 million acres in size. That section also requires Interior to conduct at least 6

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 53    Filed 10/24/25    Page 35 of 54

lease sales in the Cook Inlet region of Alaska between 2026 and 2032, with each lease sale at least 1 million acres in size.

## IV. PRESIDENTIAL WITHDRAWALS AND PRESIDENT TRUMP'S ATTEMPTS AT REVERSAL

64.     There is a long history of presidential withdrawals from oil and gas leasing under OCSLA, both permanent and time-limited, dating back to 1960, when President Eisenhower withdrew areas of the Key Largo Coral Reef Preserve, now part of Florida Keys National Marine Sanctuary. Since Eisenhower first utilized Section 12(a), Presidents Nixon (through his Secretary of the Interior), George H.W. Bush, Bill Clinton, George W. Bush, Obama, Biden, and even President Trump have all issued withdrawals. Some of these covered large areas: President Clinton's withdrawals covered 300 million acres, while President Biden's withdrawals covered more than 625 million acres. Presidents have also used their withdrawal power in protected areas, such as marine sanctuaries, to permanently bar oil and gas leasing.

65.     Until 2017, no president had ever attempted to undo or reverse a prior withdrawal of Outer Continental Shelf areas, other than one with an express end date.

66.     On January 27, 2015, President Obama permanently withdrew coastal areas in the Arctic's Beaufort and Chukchi Seas and the Hanna Shoal region in the Chukchi Sea from oil and gas leasing. The President acted pursuant to the authority

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 36 of 54

vested in him by Congress through Section 12(a). The President cited the critical importance of these areas to subsistence use by Alaska Natives as well as for marine mammals, other wildlife, and wildlife habitat. He stated his intention to ensure that the unique resources of these areas remain available for future generations.

67. On December 9, 2016, as part of his creation of a Northern Bering Sea Climate Resilience area, President Obama permanently withdrew areas of the Northern Bering Sea from future oil or gas leasing. The President acted pursuant to the authority vested in him by Congress through Section 12(a), and stated that the withdrawal "furthers the principles of responsible public stewardship entrusted to this office and takes due consideration of the importance of the withdrawn area to Alaska Native tribes, wildlife, and wildlife habitat, and the need for regional resiliency in the face of climate change."[9]

68. On December 20, 2016, President Obama, acting pursuant to the authority vested in him by Congress through Section 12(a), permanently withdrew all additional unleased portions of the Chukchi and Beaufort Seas in Alaska that were not already withdrawn, except for certain nearshore OCS lease blocks in the Beaufort Sea Planning Area, as well as 26 major canyons and canyon complexes

---

[9] Plaintiffs in this action are not challenging President Trump's purported revocation of areas of the Northern Bering Sea, but are challenging all other revocations of withdrawals made by President Obama and President Biden.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 53    Filed 10/24/25    Page 37 of 54

offshore the Atlantic coast, from future oil and gas leasing and any resulting

exploration and development. In total, President Obama's withdrawals protected

98 percent of the Arctic OCS from oil and gas leasing. The protected Atlantic

canyons comprise 3.8 million acres and represent all major deepwater canyons off

the Atlantic coast not otherwise protected.

69.     As described by then-Secretary of the Interior Sally Jewell, President

Obama's withdrawal protects the Arctic Ocean's vibrant and fragile offshore

ecosystems, which are home to marine mammals and other important ecological

resources and marine species on which many Alaska Native communities rely for

subsistence and cultural traditions. Then-BOEM Director Abigail Ross Hopper

stated that "[r]isks associated with oil and gas activity in the remote, harsh and

undeveloped Arctic are not worth taking when the nation has ample energy sources

near existing infrastructure." She explained that "[o]il spill response and clean-up

raises unique challenges in the Arctic and a spill could have substantial impacts on

the region, particularly given the ecosystem fragility and limited available

resources to respond to a spill."

70.     The White House released a fact sheet detailing numerous factual and

scientific bases for the Arctic withdrawal. The fact sheet describes a unique,

vibrant, vulnerable, and interconnected ecosystem that contains species relying on

and migrating through large areas. It notes the increased stress on species in the

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 38 of 54

Arctic Ocean caused by climate change, including harm to polar bears, seals, and walruses from loss of sea ice. The fact sheet cites the significant risks from oil spills likely to result from offshore drilling in this remote and treacherous region. It notes the imperative to transition from fossil fuels to renewable sources of energy to address climate change, citing our nation's needs and international commitments. It finds that "risks associated with oil and gas activity in remote and harsh Arctic environments are not worth taking when the United States has ample energy sources near existing infrastructure elsewhere." The fact sheet also explains technical and financial barriers to successful exploitation of the areas' offshore resources.

71.     With regard to the Atlantic, President Obama cited the canyons' critical importance along the edge of the continent for marine mammals, deepwater corals, other wildlife, wildlife habitat, and unique resources, and the need to ensure they remain for future generations. The White House fact sheet accompanying this withdrawal describes at-risk species, commercially valuable fish populations, and habitat for protected sea turtles and marine mammals, including migratory whales found in the Atlantic canyons. It cites research that established the Atlantic canyons as biological hotspots, contributors to climate stability, and sources of economic benefits. And it explains threats to the Atlantic canyons from climate

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 39 of 54

change and from oil and gas-related activities, as well as technical and operational risks associated with exploring and developing them for oil.

72. However, following the change in presidential administrations, President Trump issued Executive Order 13795 on April 28, 2017, entitled "Implementing an America-First Offshore Energy Strategy." 82 Fed. Reg. 20815 (May 3, 2017). Section 4(c) of that order purported to revoke President Obama's December 9, 2016 withdrawal of areas of the Northern Bering Sea. *Id*. at 20816. Section 5 of that order purported to revoke President Obama's January 27, 2015 and December 20, 2016 withdrawals in the Atlantic and Arctic Oceans. *Id*.

73. On the first business day following President Trump's issuance of Executive Order 13795, the Secretary of the Interior issued Secretarial Order No. 3350 to implement it. The secretarial order called for expedited consideration of seismic permitting applications for the Atlantic Ocean, establishment, in cooperation with NMFS, of a plan for expedited consideration of MMPA permits for seismic surveying, and development and implementation of a streamlined permitting approach for privately-funded seismic data research and collection aimed at expeditiously determining the offshore energy resource potential of the United States. As discussed above, it also called for immediate development of a new five-year program with full consideration of leasing in the previously excluded areas.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG   Document 53   Filed 10/24/25   Page 40 of 54

74.     On May 3, 2017, several organizations challenged President Trump's Executive Order revoking the withdrawal of these OCS areas as violating the Property Clause of the U.S. Constitution and as *ultra vires* in a complaint filed in U.S. District Court for the District of Alaska. On March 29, 2019, the district court issued a merits decision finding that Section 12(a) of OCSLA did not authorize President Trump to revoke a prior withdrawal and thereby vacated Section 5 of Executive Order 13795. *League of Conservation Voters v. Trump*, 363 F. Supp. 3d 1013, 1020–31 (D. Alaska 2019), *vacated and remanded sub nom. League of Conservation Voters v. Biden*, 843 F. App'x 937 (9th Cir. 2021).

75.     Federal Defendants and industry intervenors appealed that decision to the Ninth Circuit Court of Appeals. However, prior to a decision on the merits, President Biden took office and issued Executive Order No. 13990 on January 20, 2021. 86 Fed. Reg. 7037 (Jan. 25, 2021). Among other items, Executive Order 13990 exercised President Biden's authority pursuant to Section 12(a) of OCSLA to reinstate President Obama's December 9, 2016 and December 20, 2016 withdrawals for the Northern Bering Sea, unleased portions of the Chukchi Sea and Beaufort Sea that were not already withdrawn, and 26 offshore canyon and canyon complexes in the Atlantic. The Executive Order also revoked Executive Order 13795. Based on the revocation of Executive Order 13795, the court held that the case was moot. *League of Conservation Voters v. Biden*, 843 F. App'x 937, 938

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 41 of 54

(9th Cir. 2021). Pursuant to *United States v. Munsingwear*, 340 U.S. 36, 39 (1950), the Ninth Circuit also vacated the judgment of the district court and remanded with instructions to dismiss the case without prejudice. *League of Conservation Voters*, 843 F. App'x at 939.

76.     While this litigation was ongoing, on September 8, 2020, President Trump issued a memorandum exercising his authority under Section 12(a) of OCSLA to withdraw, for a ten-year period, certain OCS areas in the Eastern and Central Gulf of Mexico and the South Atlantic and Straits of Florida Planning Areas.

77.     On March 13, 2023, President Biden issued a memorandum withdrawing remaining areas of the Beaufort Sea not previously withdrawn from oil and gas leasing by President Obama, pursuant to his authority under Section 12(a). President Biden stated that such withdrawal was "[c]onsistent with principles of responsible public stewardship, and (1) with due consideration of the irreplaceable marine and coastal environments—including for marine mammals, other wildlife, wildlife habitat, scientific research, and Alaska Native subsistence use—of the Beaufort Sea area of the Outer Continental Shelf; (2) independently with due consideration of the vulnerability of the ecosystems and coastal communities to oil spills, particularly where limited or no oil and gas development has yet occurred; and (3) independently with due consideration of the national need

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 42 of 54

to curtail, mitigate, build resilience against, and adapt to the devastating and irreversible consequences of climate change for the human environment and for the marine and coastal environments."

78. On January 6, 2025, President Biden issued two memoranda exercising his authority under Section 12(a) to withdraw OCS areas in the Pacific Ocean, the Atlantic Ocean, the Eastern Gulf of Mexico and small portions of the Central Gulf of Mexico, and the Northern Bering Sea in Alaska. *See* 90 Fed. Reg. 6739 (Jan. 17, 2025) (Northern Bering Sea withdrawal memorandum); 90 Fed. Reg. 6743 (Jan. 17, 2025) (Pacific, Atlantic, and Gulf of Mexico withdrawal memorandum). In the memoranda, President Biden stated that these withdrawals were "[c]onsistent with principles of responsible public stewardship, and with due consideration of the irreplaceable marine and coastal environments, including wildlife and wildlife habitat, of" the withdrawn areas, "and independently with due consideration of the vulnerability of these ecosystems and coastal communities, where limited or no oil and natural gas development has yet occurred, to oil spills," and "independently with due consideration of the national need to curtail, mitigate, build resilience against, and adapt to the devastating and irreversible consequences of climate change for the human environment and for the marine and coastal environments." 90 Fed. Reg. at 6739, 6743. An accompanying fact sheet noted that President Biden "determined that the environmental and economic risks and harms

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 53    Filed 10/24/25    Page 43 of 54

that would result from drilling in these areas outweighed the limited fossil fuel resource potential," and the withdrawals would ensure "that these regions can remain healthy and safe from the risk of oil spills resulting from development that would do little, if anything, to meet the nation's energy needs."

79.     That same day, President Trump publicly stated, "It's ridiculous. I'll unban it immediately."[10] The following day, President Trump publicly stated, "I'm going to put it back on day one. I'm going to have it revoked on day one."[11]

80.     On January 17, 2025, a group of plaintiffs led by the State of Louisiana and the American Petroleum Institute filed a lawsuit in the Western District of Louisiana challenging President Biden's January 6, 2025 withdrawals. *Louisiana v. Biden*, Civ. No. 2:25-cv-00071 (W.D. La. filed Jan. 17, 2025). In that litigation, industry groups claim "clear and unquestionable" harm because, if not for President Biden's January 6, 2025 actions, they would be actively exploring those OCS areas and leasing them for oil and gas development.

81.     On January 20, 2025, the State of Texas and W&T Offshore, Inc., a Texas-based oil and natural gas producer, filed a similar lawsuit in the Eastern

---

[10] Aubrie Spady, *Trump plans to 'immediately' reverse Biden's 'ridiculous' ban on new oil and gas drilling along US coast*, Fox News (Jan. 6, 2025), https://www.foxnews.com/politics/trump-plans-reverse-bidens-ban-oil-gas-drilling-us-coast.
[11] Ivan Pereira, *Trump claims Biden blocking his agenda at the last-minute. Policy experts weigh in*, ABC News (Jan. 11, 2025), https://abcnews.go.com/Politics/trump-claims-biden-blocking-agenda-minute-policy-experts/story?id=117562473.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 44 of 54

District of Texas. *Texas v. Biden*, Civ. No. 9:25-cv-00010 (E.D. Tex. filed Jan. 20, 2025). In that complaint, Texas claims that President Biden's January 6, 2025 actions would deprive the state of "millions—if not billions—of dollars of future revenues" from oil and gas development, while W&T Offshore claims that it had "developed a business prospect within the moratorium area" but "has lost the opportunity to lease this prospect due to the permanent ban."

82. On January 20, 2025, President Trump issued Executive Order 14148 entitled "Initial Rescissions of Harmful Executive Orders and Actions." 90 Fed. Reg. 8237 (Jan. 28, 2025). In section 2 of that Executive Order, President Trump listed dozens of "executive actions" that "are hereby revoked," without citing any specific authority for those revocations. Several provisions of Executive Order 14148 are relevant here.

(a) Section 2(f) revoked President Biden's Executive Order 13990. Executive Order 13990 was the basis for the Ninth Circuit's mootness determination in *League of Conservation Voters v. Biden*, 843 F. App'x 937, 938 (9th Cir. 2021). Revoking Executive Order 13990 did two things relevant to this lawsuit. It purported to revoke President Biden's OCSLA Section 12(a) reinstatement of President Obama's withdrawals for the unleased portions of the Chukchi Sea and Beaufort Sea that were not already withdrawn, and 26 offshore canyon and canyon complexes in the Atlantic

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 53    Filed 10/24/25    Page 45 of 54

Ocean. It thus purported to revoke prior section 12(a) withdrawals directly.

It also rescinded Executive Order 13990's revocation of Executive Order

13795, in which President Trump purported to revoke President Obama's

Arctic Ocean and Atlantic canyon section 12(a) withdrawals. In revoking

Executive Order 13990's revocation of Executive Order 13795, Executive

Order 14148 effectively reinstated Executive Order 13795's revocation of

the Obama withdrawals, the action at issue in *League of Conservation*

*Voters v. Trump*.

(b) Section 2(c) revoked President Biden's March 13, 2023 Presidential

Memorandum which withdrew remaining areas of the Beaufort Sea not

previously withdrawn from oil and gas leasing, pursuant to his authority

under OCSLA Section 12(a).

(c) Section 2(vvv) and Section 2(www) revoked President Biden's January

6, 2025 Presidential Memoranda that withdrew OCS areas in the Pacific

Ocean, the Atlantic Ocean, the Eastern Gulf of Mexico and small portions of

the Central Gulf of Mexico, and the Northern Bering Sea in Alaska, from oil

and gas leasing pursuant to his authority under OCSLA Section 12(a).

83.     Treating Executive Order 14148 as binding and these prior

withdrawals as being revoked, Secretary Burgum has already taken several actions

to proceed with oil and gas leasing in these previously withdrawn areas. On

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 46 of 54

February 3, 2025, Secretary Burgum issued a series of Secretarial Orders to "Unleash American Energy" and set a "vision for American Energy Dominance."[12] Among those orders was Secretarial Order 3420, entitled "Announcing President Trump's Revocation of Former Outer Continental Shelf Withdrawals."[13] Secretarial Order 3420 announced the Department of the Interior's commitment "to the advancement of President Trump's energy policies, including to encourage energy exploration and production on Federal lands and waters, including on the Outer Continental Shelf (OCS)." The Order provides that "President Trump has revoked the withdrawals of the OCS from oil and gas leasing that the Biden administration issued" and instructs that "Bureaus and Offices are to take all actions available to expedite the leasing of the OCS for oil and gas exploration and production."

84.    Secretary Burgum also issued Secretarial Order 3417, entitled "Addressing the National Energy Emergency."[14] Secretarial Order 3417 states that the "integrity and expansion of our Nation's energy infrastructure—from coast to

---

[12] U.S. Department of the Interior, *Secretary Doug Burgum Signs First Round of Secretary's Orders to Unleash American Energy* (Feb. 3, 2025), https://www.doi.gov/pressreleases/secretary-doug-burgum-signs-first-round-secretarys-orders-unleash-american-energy.
[13] Secretary of the Interior, Secretarial Order No. 3420, *Announcing President Trump's Revocation of Former Outer Continental Shelf Withdrawals* (Feb. 3, 2025), https://www.doi.gov/sites/default/files/document_secretarys_orders/so-3420-signed.pdf.
[14] Secretary of the Interior, Secretarial Order No. 3417, *Addressing the National Energy Emergency* (Feb. 3, 2025), https://www.doi.gov/document-library/secretary-order/so-3417-addressing-national-energy-emergency.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG    Document 53    Filed 10/24/25    Page 47 of 54

coast—is an immediate and pressing priority for the protection of the United States' national and economic security." The Order directs all Bureaus and Offices of the Department to "identify the emergency authorities available to them, as well as all other legal authorities, to facilitate the identification, permitting, leasing, development, production, transportation, refining, distribution, exporting, and generation of domestic energy resources and critical minerals including, but not limited to, on Federal lands and the Outer Continental Shelf."

85.     Further, the Secretary issued Secretarial Order 3418, entitled "Unleashing American Energy."[15] Secretarial Order 3418 restates the administration's goal "encouraging energy exploration and production on Federal lands and waters, including on the Outer Continental Shelf." Included in the Order is a directive for Assistant Secretaries to prepare a plan within 15 days to "suspend, revise, or rescind" the current 2024–2029 five-year plan governing OCS oil and gas leasing, and to include "actions to review the 5-year program for offshore oil and gas leasing to assess the need for changes to meet the Nation's energy goals."

86.     As discussed above, Interior's April 2025 request for information on its new five-year leasing program reiterated President Trump's desire to "encourage energy exploration and production on federal lands and waters,

---

[15] Secretary of the Interior, Secretarial Order No. 3418, *Unleashing American Energy* (Feb. 3, 2025), https://www.doi.gov/document-library/secretary-order/so-3418-unleashing-american-energy.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*

including on the [OCS]," stated that Interior is considering leasing in all OCS planning areas, and noted that the Bureau "may receive new [geological and geophysical] permit applications in the near future" in the Atlantic OCS region. 90 Fed. Reg. at 17973–74.

<p style="text-align:center"><strong>CLAIMS FOR RELIEF</strong></p>

<p style="text-align:center"><strong>FIRST CLAIM FOR RELIEF</strong></p>

<p style="text-align:center"><strong>(CONSTITUTIONAL VIOLATION)</strong></p>

87.     Plaintiffs incorporate each and every allegation set forth in the Complaint by reference.

88.     Plaintiffs have a right of action to seek redress for official actions by the President that violate the Constitution.

89.     The Property Clause of the U.S. Constitution provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States ... ." U.S. Const. art. IV, § 3, cl. 2. The President has the authority to regulate such property only to the limited extent that Congress has delegated that authority to the President.

90.     OCSLA Section 12(a), 43 U.S.C. § 1341(a), authorizes the President to withdraw unleased lands of the outer continental shelf from disposition. It does not authorize the President to re-open withdrawn areas to disposition.

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 49 of 54

91.     There is no other source of authority that permits the President to reverse or undo a Section 12(a) withdrawal.

92.     In reversing President Biden's and President Obama's Section 12(a) withdrawals in the Arctic Ocean (including the Chukchi and Beaufort Seas), the Pacific Ocean, the Atlantic Ocean, and the Eastern and Central Gulf of Mexico, through Executive Order 14148 and the reinstated Executive Order 13795, respectively, President Trump acted in excess of his authority under Article II of the U.S. Constitution and intruded on Congress's non-delegated exclusive power under the Property Clause, in violation of the doctrine of separation of powers.

93.     Plaintiffs and their members have no adequate remedy at law and absent relief from this Court will suffer irreparable injury flowing from President Trump's unlawful action.

## SECOND CLAIM FOR RELIEF
## (STATUTORY *ULTRA VIRES* ACTION)

94.     Plaintiffs incorporate each and every allegation set forth in the Complaint by reference.

95.     Plaintiffs have a right of action to redress unlawful official action by the President that exceeds his statutory authority.

96.     The President lacks authority to reverse or undo Section 12(a) withdrawals. OCSLA Section 12(a), 43 U.S.C. § 1341(a), authorizes the President

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG     Document 53     Filed 10/24/25     Page 50 of 54

to withdraw unleased lands of the Outer Continental Shelf from disposition. Neither OCSLA nor any other statute authorizes the President to re-open for disposition areas withdrawn under OCSLA Section 12(a).

97.　　In reversing President Biden's and President Obama's Section 12(a) withdrawals in the Arctic Ocean (including the Chukchi and Beaufort Seas), the Pacific Ocean, the Atlantic Ocean, and the Eastern and Central Gulf of Mexico, through Executive Order 14148 and the reinstated Executive Order 13795, respectively, President Trump acted in excess of, and wholly without, statutory authority.

98.　　Plaintiffs and their members have no adequate remedy at law and absent relief from this Court will suffer irreparable injury flowing from President Trump's unlawful action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.　　Declare that (i) Sections 2(f), 2(ccc), 2(vvv), and 2(www) of President Trump's January 20, 2025 Executive Order 14148 entitled "Initial Rescissions of Harmful Executive Orders and Actions" that purport to revoke President Biden's Section 12(a) withdrawals of portions of the Outer Continental Shelf, and (ii) Section 5 of President Trump's April 28, 2017 Executive Order 13795 entitled "Implementing an America-First Offshore Energy Strategy" that purports to revoke

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG　　Document 53　　Filed 10/24/25　　Page 51 of 54

President Obama's Section 12(a) withdrawals of portions of the Outer Continental Shelf, as reinstated by Section 2(f) of Executive Order 14148, are in excess of his statutory powers, in excess of his powers under, and therefore in violation of, the United States Constitution, and are unlawful and invalid;

2.　　Declare that Secretary Burgum and Secretary Lutnick cannot lawfully implement the provisions of President Trump's January 20, 2025 Executive Order 14148 entitled "Initial Rescissions of Harmful Executive Orders and Actions," or President Trump's April 28, 2017 Executive Order 13795 entitled "Implementing an America-First Offshore Energy Strategy," that purport to revoke President Biden's and President Obama's Section 12(a) withdrawals of portions of the Outer Continental Shelf;

3.　　Enjoin Secretary Burgum and Secretary Lutnick from complying with or relying in any way on the provisions of President Trump's January 20, 2025 Executive Order 14148 entitled "Initial Rescissions of Harmful Executive Orders and Actions," or President Trump's April 28, 2017 Executive Order 13795 entitled "Implementing an America-First Offshore Energy Strategy," that purport to revoke President Biden's and President Obama's Section 12(a) withdrawals of portions of the Outer Continental Shelf;

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLG　　Document 53　　Filed 10/24/25　　Page 52 of 54

4.      Award Plaintiffs their costs in this action, including reasonable

attorneys' fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, or

as otherwise appropriate; and

5.      Grant such other relief as the Court deems just and proper.

Respectfully submitted this 24th day of September, 2025.

<div style="margin-left: 40%;">

*/s/ George Torgun*
George Torgun (pro hac vice)
Brettny Hardy (pro hac vice)
Earthjustice
180 Steuart St. #194330
San Francisco, CA 94105
T: (415) 217-2000
gtorgun@earthjustice.org
bhardy@earthjustice.org

Erik Grafe (AK Bar #0804010)
Hannah Payne Foster (AK Bar #2105045)
Earthjustice
310 K Street, Suite 508
Anchorage, AK 99501
T: (907) 277-2500
egrafe@earthjustice.org
hfoster@earthjustice.org

Eric P. Jorgensen (AK Bar #8904010)
Earthjustice
325 Fourth Street
Juneau, AK 99801
T: (907) 586-2751
ejorgensen@earthjustice.org

</div>

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*

Stephen D. Mashuda (*pro hac vice*)
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
T: (206) 343-7340
smashuda@earthjustice.org

*Counsel for Plaintiffs Northern Alaska
Environmental Center, Alaska Wilderness
League, Oceana, Inc., Surfrider Foundation,
Center for Biological Diversity, Healthy Gulf,
Turtle Island Restoration Network,
Greenpeace, Inc., and Conservation Law
Foundation*


Devorah Ancel (*pro hac vice*)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
T: (415) 845-7847
devorah.ancel@sierraclub.org

*Counsel for Plaintiff Sierra Club*


Jaclyn H. Prange (*pro hac vice*)
Irene Gutierrez (*pro hac vice*)
Natural Resources Defense Council
111 Sutter St., Fl. 21
San Francisco, CA 94104
T: (415) 875-6100
jprange@nrdc.org
igutierrez@nrdc.org

*Counsel for Plaintiff Natural Resources
Defense Council*

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT
*N. Alaska Env't Ctr. et al. v. Donald J. Trump et al.*
Case 3:25-cv-00038-SLC   Document 53   Filed 10/24/25   Page 54 of 54